CLOPTON v. CECIL.

No. 12160.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 25, 1950.

Rehearing Denied Nov. 22, 1950.

252

Strickland, Wilkins, Hall & Mills, Mission, for appellant.

Hill, Lochridge & King, Mission, Cecil, Keith & Mahaffy, and John P. Blair, all of Beaumont, for appellee.

NORVELL, Justice.

■ This is an appeal from a judgment reforming a deed upon the ground of mutual mistake. The primary question involved is whether or not appellee's demand for reformation was barred by the four year statute of limitations. Article 5529, Vernon's Ann.Civ.Stats. The deed was executed on November 8, 1938, and this suit was not filed until April 6, 1948. Appellant contends that appellee and T. S. Reed, who caused John H. Clopton, now deceased, to execute the conveyance to Lamar Cecil, the appellee, accepted and examined the deed in 1938, and that limitation commenced to run at that time. The statute of limitations does not begin to run against a suit to reform a deed for mutual mistake until the mistake has been discovered or should have been discovered by the exercise of reasonable diligence. Oldham v. Medearis, 90 Tex. 506, 39 S.W. 919, Kelley v. Ward, 94 Tex. 289, 60 S.W. 311, and the trial court found that neither T. S. Reed nor Lamar Cecil was negligent or lacking in reasonable diligence in failing to discover the mistake prior to December, 1946, and that they acted with reasonable diligence thereafter. The effect of appellant's points is to challenge the sufficiency of the evidence to support these findings. It is asserted as a contrary proposition thereto that both the pleadings and the evidence show conclusively that appellee's suit was barred by inattention, negligence and laches chargeable to him.

■ We must assume that evidentiary details having support in the evidence were found in accordance with the ultimate fact findings made by the trial judge, and in line with those findings we make the following statement of the case:

From 1935 until Clopton's death in the early part of 1947, Reed and Clopton, acting together, purchased and sold numerous oil properties, some of which were located in Starr County, Texas. In a number of instances Reed put up the money and Clopton made the purchases. Clopton for his services would receive an interest in the property after the purchase price had been paid back from rentals or royalties. In 1938 Clopton and Reed each owned an undivided one-eighth mineral interest in approximately 1431 acres of land in Starr County, that is, each owned approx-

imately 179 mineral acres. Clopton owed Reed $2,803.55 and in order to discharge this indebtedness, he agreed to convey to Reed or his nominee an undivided 18.6 mineral acres of his interest in the 1431 acres above mentioned, at an agreed price of $150 per acre. Reed requested that the conveyance be made to his son-in-law, Lamar Cecil, the appellee. Clopton had a conveyance prepared, executed the same and delivered it to Reed who had the same recorded. By this deed, Clopton attempted to convey an 18.6 acre interest by using a decimal fraction. The property was described in the granting clause as "an undivided .001298 per cent interest in and to all of the oil, gas and other minerals in and under the following described tract of land situated in Starr County, Texas:" Then followed a description of 1302 acres out of a 1673 acre share set apart to one M. Desmond in a partition suit, and a 640 acre section. The deed, however, contained an exception as to Lots 3, 4, 5, 9, 10, 12, 13, 14, 15, 17, 18, 19 and 22 out of the San Cristobal Subdivision theretofore sold by one Cristobal Salinas. Reference was made to a map or plat of the subdivision which was evidently one involving all or parts of the 1302 acre tract and the section mentioned. Although the net acreage of the tracts affected by the conveyance is not set out in the instrument, the parties to the transaction seem to have accepted 1431 acres as being the area involved. It was admitted by appellant upon the trial that the conveyance of "an undivided .001298 per cent interest" conveyed only a 1.86 acre mineral interest.

Appellee alleged that when T. S. Reed received the deed from Clopton, "he examined it, but due to the fact that the mineral interest conveyed therein was in decimal fractions, and the number of mineral acres conveyed thereby could not be readily ascertained from a reading of the deed, and due to his long and close association with the said John H. Clopton, and relying upon the same John H. Clopton, he did not examine it as closely as he would if he had been dealing with a stranger to him * * *." The evidence supports the foregoing allegations, and it also ap-

pears that in 1940, the owners of the fractional mineral interests of one-half of the 1431 acre tract, including Clopton, Reed and Cecil, appointed Reed as trustee to collect and disburse the delay rentals paid by the Sun Oil Company, the holder of an oil and gas lease on the property. Reed disbursed the sums received for these rentals and paid Cecil on the basis of an 18.6 acre interest and reduced the payments to Clopton accordingly. Clopton made no protest of this action, and by letter of June 17, 1941, stated that he had conveyed 18.6 mineral acres to Cecil. When oil was discovered upon the property in 1946, a representative of the Sun Oil Company pointed out to Reed and Cecil that, according to the title papers of record, Cecil had only a 1.86 acre interest rather than a 18.6 acre interest in the property. The matter was called to Clopton's attention by letter dated January 7, 1947, and thereafter, upon meeting Reed in the Milam Building in San Antonio, Clopton acknowledged the mistake and agreed to correct it. However, Clopton died February 7, 1947, and no corrective instrument was executed.

Appellant relies upon such authorities as Sherman v. Sipper, 137 Tex. 85, 152 S. W.2d 319; Cleveland State Bank v. Gardner, Tex.Com.App., 286 S.W. 173, and Texas Osage Cooperative Pool, Inc., v. Colwell, Tex.Civ.App., 205 S.W.2d 93, wherein it was held that one receiving a deed and having an opportunity to examine it and ascertain the fraud or mistake can not have the instrument reformed after four years from the date of delivery (when the matter of limitation is raised) in the absence of allegations and proof of facts which would excuse the plaintiff's failure to act within the statutory period. In some of the cited cases, Sherman v. Sipper, for example, it was pointed out that no attempt was made to explain or excuse the delay by either pleadings or proof.

Appellee here sought to explain his delay and the question raised relates to the adequacy of the excuse offered by him and held to be sufficient by the trial court.

The determination of lawsuits of this kind necessarily depends upon the facts

of the particular case, such as, the nature of the mistake, the action of the parties in dealing with the property after the mistake has occurred and similar matters. This is well illustrated by the fact that in the case of Ramsey v. McKamey, 137 Tex. 91, 152 S.W.2d 322, 324, which immediately follows the report of Sherman v. Sipper in the Southwestern Reporter, it was held that as the rights of third parties had not intervened the correction of a mutual mistake as to the acreage contained in an open and unfenced tract of land was not barred by delay, inattention or laches, even though the mistake was not discovered from 1915 to 1938. The Supreme Court said: "Interested parties certainly may be relieved of unjust and unfair hardships which have resulted from mere mistakes. Granting such relief is simply correcting an omission or mistake and doing justice to all parties."

█ In the case before us, the defective instrument was prepared by Clopton or under his direction. In Texas Osage Co-operative Royalty Pool v. Colwell, Tex. Civ.App., 205 S.W.2d 93, the fact that the party seeking relief from a mistake was responsible for the preparation of the deed is regarded by the court as an important circumstance. Although the parties in prior negotiations discussed and considered "mineral acres", the person who prepared the deed sought to translate, so to speak, "mineral acres" into undivided interests by the use of a decimal fraction. The exact number of "mineral acres" called for by the phrase "an undivided .001298 per cent interest" is not readily ascertainable. Perhaps the most important circumstance disclosed by the evidence is the fact that in 1940, less than four years from the date of the execution of the deed, Clopton, Cecil and Reed, by appointing Reed the trustee to collect delay rentals, pursued a course of action consistent with Cecil's having an 18.6 acre interest in the property. The nearest case in point cited by either party seems to be Luginbyhl v. Thompson, 11 S.W.2d 380, by the Amarillo Court of Civil Appeals, in which a deed was reformed by inserting a mineral reservation which had been omitted by mutual mistake. The conveyance was executed and delivered on July 23, 1920, but the mistake was not discovered until May, 1926. It was held that as the parties had acted with reference to the deed as if it actually contained the mineral reservation, relief by way of reformation was not barred by limitation. In the later case of Kennedy v. Brown, Tex.Civ.App., 113 S.W.2d 1018, 1021, the Amarillo Court said: "The effect of our holding in the [Luginbyhl] case was that the purchaser of the land having permitted the grantor to collect the proceeds of the lease and, although having full knowledge that he was doing so, made no objection, his action in that regard lulled the grantor into a sense of security which, under the law, excused him from exercising any effort to ascertain the fact that his rights under the contract had been omitted from the deed."

We conclude that the findings of fact made by the trial judge are supported by the evidence and adopt the same. We also approve the conclusions of law made by the court below to the effect that appellee's claim to reformation is not barred by laches or limitation. The judgment appealed from is accordingly affirmed.