**COURSEVIEW, Incorporated, Appellant,**

v.

**PHILLIPS PETROLEUM COMPANY et al., Appellees.**

No. 12981.

Court of Civil Appeals of Texas.

Galveston.

Jan. 24, 1957.

Motion for Rehearing Denied Feb. 28, 1957.

892

Andrews, Kurth, Campbell & Bradley and F. L. Andrews, James R. Drury and James W. Dilworth, Houston, for appellant.

R. L. Foster and Harry D. Turner, Bartlesville, Okl., and R. K. Batten and E. H. Brown, Houston, for appellee Phillips Petroleum Co.

Woodul, Arterbury & Wren and Escar R. Wren, Houston, for appellee Mid-Coast Oil Co.

HAMBLEN, Chief Justice.

The general nature of this litigation is disclosed by the following statement of the nature and result of the case taken from the appellant's brief:

"On February 16, 1939, Plaintiff's predecessor in title, Amos L. Beaty & Company, Inc., and Victor H. Borsodi, entered into an agreement with Defendant, Phillips Petroleum Company under which Amos L. Beaty & Company and Borsodi conveyed to Phillips Petroleum Company certain oil, gas and mineral leases in the Chocolate Bayou Area in Brazoria County, Texas, reserving '¼ of the net profits that shall be derived by Second Party (Phillips) from the development and operation of the lands covered by said oil and gas leases for the purposes stated in said leases'. The agreement (herein referred to as the 1939 contract also provided that if either party should purchase any 'royalty or mineral interest or fee title' within an area specified in the contract, the other party would be given written notice of such purchase and such party would have twenty days thereafter within which to purchase from the acquiring party a specified fractional interest therein.

"Plaintiff, Courseview, Inc., has succeeded to the purchase rights of Amos L. Beaty & Company under the February 16, 1939 agreement.

"This suit was brought by Plaintiff to require Phillips Petroleum Company to disclose purchases which it has made within the restricted area specified in the 1939 contract so that Plaintiff might exercise its rights thereunder and to enforce Plaintiff's right to buy its pro rata share of various minerals, royalties and fee titles heretofore purchased by Phillips Petroleum

Company and with respect to which purchases no notice was ever given as required by the 1939 contract, and if necessary to the granting of such relief for reformation of certain instruments on grounds of fraud and mistake. Plaintiff pleaded in the alternative for damages. Defendants pleaded limitations and that Plaintiff did not own the purchase option right under the 1939 contract which it sought to enforce.

"At the conclusion of the first trial, the Trial Court entered a mistrial and required Plaintiff to make Dr. E. W. K. Andrau (since deceased and his estate has been substituted and has filed a disclaimer in favor of Plaintiff) and Mid-Coast Oil Company additional parties on the ground that it was necessary to construe certain deeds from Plaintiff's predecessor in title to these parties. The Court also ordered Phillips to disclose its purchases in the restricted area.

"On a second trial at the conclusion of all the evidence the Trial Court overruled motions for instructed verdicts of Plaintiff and Defendant, Phillips, granted the motion of Defendant, Mid-Coast Oil Company, and notwithstanding it had overruled Phillips' motion for an instructed verdict, directed the jury to return a verdict that the Plaintiff take nothing. Upon appeal to this Honorable Court the judgment of the Trial Court was reversed and the case remanded for a new trial, Courseview, Inc., v. Phillips Petroleum Company, 258 S.W. 2d 391, writ refused.

"Following the remand to the Trial Court the case was again tried and submitted to a jury and thereafter Defendants' motions for judgment were granted and judgment entered that Plaintiff take nothing. Plaintiff's motion for judgment * * *, Motion to correct the judgment * * *, and Amended Motion for new trial * * were denied."

Appellees, Phillips Petroleum Company and Mid-Coast Oil Company, agree that the

foregoing statement is factually correct except insofar as it asserts that the appellant "has succeeded to the purchase rights of Amos L. Beaty & Company under the February 16, 1939, agreement", which assertion, they say, is incorrect. Appellees say that all of such rights under the jury findings were held by the trial court to have passed to and to be presently owned by Mid-Coast Oil Company; therefore, appellees further say appellant's statement that the suit is for specific performance of its claimed option rights under the 1939 contract is correct as to appellee, Phillips Petroleum Company, but as between appellant and appellee Mid-Coast Oil Company the suit is one to determine which owned the option rights under the 1939 contract.

The judgment from which this appeal was taken was rendered after an extended trial, which has produced a record consisting of a 465 page transcript and a statement of facts of over 800 pages, including 80 original exhibits. The factual issues raised by the evidence were submitted to the jury in 93 special issues. Appellant's points of error, when condensed as much as the complexity of this litigation will permit, number 37. Appellee Phillips Petroleum Company has answered such points in 11 counter-points. Appellee Mid-Coast Oil Company has adopted the counter-points of Phillips Petroleum Company and has presented two in addition thereto. Phillips Petroleum Company's counter-points Nos. 1 and 2 are that the judgment of the trial court is correct because appellant does not own the rights on which it sues. These counter-points are stated to be in reply to all of appellant's points of error. Since, as appellees say, it is axiomatic that if appellant does not own such rights it cannot have specific performance thereof, such counter-points do present a determinative issue in this appeal; however, the counter-points appear to be directly in reply to appellant's point of error No. 32, which is as follows:

"The court erred in failing to hold as a matter of law that the deed from Wil-

liam W. Burch to Mid-Coast Oil Company did not convey any purchase option right under the 1939 contract."

Since, as stated, appellant's point No. 32 and appellee's counter-points Nos. 1 and 2 present an issue which may be completely determinative of this appeal, we consider it appropriate to pass upon such points first. To properly do so requires a more detailed statement of the factual basis of this controversy.

In 1939 Amos L. Beaty & Company, Inc., and Victor H. Borsodi assigned to Phillips Petroleum Company certain oil, gas and mineral leases in the Chocolate Bayou area in Brazoria County, Texas. In such assignment the assignors reserved one-fourth of the net profits from the development and operation of the lands covered by such leases. The agreement further provided that if either party should purchase any royalty or mineral interest or fee title within an area specified in the contract, the other party would be notified thereof and given an opportunity to purchase from the acquiring party a specified fractional interest therein. This last-mentioned provision, which is by the litigants referred to, and will hereinafter be referred to, as the "purchase rights", is contained in paragraph 7 of the assignment and is in the following language:

"7. Either party hereto shall have the right to purchase any royalty or mineral interest or fee title within the Chocolate Bayou Prospect area, which shall be deemed to include all lands within a radius of two and one-half (2½) miles of the center of Section Five (5), H. T. & B. Survey, Abstract 221, but it is agreed that, in the event First Parties shall purchase any such royalty or mineral interest or fee title, Second Party shall have the right to purchase from First Parties an undivided three-fourths (¾) interest therein upon paying First Parties three-fourths (¾) of the total cost of acquiring such interest and, likewise, in the event Second Party shall purchase any such royalty or mineral

interest or fee title, First Parties shall have the right to purchase from Second Party an undivided one-fourth (¼) interest therein upon paying to Second Party one-fourth (¼) of the total cost of acquiring such interest. Either party, upon purchasing any such royalty or mineral interest or fee title, shall notify the other party thereof in writing and the other party shall have twenty (20) days thereafter within which to elect in writing whether or not to purchase an undivided interest thereon as above provided. The total cost of acquiring any royalty or mineral interest or fee title shall be deemed to include all commissions paid on such purchases and the cost of abstracts and title examinations. First Parties agree that all leases hereafter purchased by them in said Chocolate Bayou prospect area shall be purchased only for Second Party with funds furnished by Second Party and with the approval of Second Party in advance and such leases shall not be subject to the obligation of Second Party to pay net profits to First Parties as hereinabove set forth."

By agreements in 1943 and 1945 the net profit interest of Amos L. Beaty & Company, Inc., provided for in the 1939 assignment was converted into a $\frac{1}{32}$ overriding royalty. These agreements are referred to by the litigants as the "Conversion Agreements."

On April 19, 1946, Amos L. Beaty & Company, Inc., executed to William W. Burch, and on April 22, 1946, William W. Burch executed to Mid-Coast Oil Company, conveyances which so far as here material are identical except as to parties and dates and which convey "an undivided $\frac{25225}{25625}$ths interest in all and singular the property and premises lying and being situated in the State of Texas, County of Brazoria, more particularly set forth and described in Exhibits A and B hereto annexed and made a part hereof." Exhibit B attached to each of such conveyances described eight separate tracts. Tract 8 is in each Exhibit designated as "Chocolate

Bayou Override, Brazoria County, Texas" and is described as:

"A 1/32 overriding royalty interest in the oil, gas and other minerals in, under, produced and to be produced from the hereinafter described tracts of land situated in Brazoria County, Texas, said overriding royalty interest having been created by virtue of agreements between Amos L. Beaty and Company, Inc. and Phillips Petroleum Company; said tracts of land being described in and covered by the following described oil, gas and/or mineral leases, to-wit:"

Following this language there are listed a large number of leases, most of which are described simply by date, names of the parties and a reference to the deed records. Immediately following the list of leases as so described, there appears in each conveyance a paragraph in the following language:

"Together, in each case, with all its right, title and interest in and to any additional, correction, or amended leases, extensions, renewals, contracts or agreements covering or in any manner affecting said properties."

On April 14, 1949, Amos L. Beaty & Company, Inc., for the stated purpose of effecting the dissolution of such company, conveyed to William W. Burch, the sole stockholder of such company, property described as:

" * * * all contracts, leases, franchises, licenses, permits, claims, demands and all other assets and property tangible and intangible of every nature and description now or hereafter owned by it, including but without limiting the generality of the foregoing, all rights title and claims of any kind and description which it may now own or may hereafter have under any contracts, undertakings, agreements, leases or other instruments heretofore entered into with Phillips Petroleum Company or any of its subsidiaries by said Amos L. Beaty and Company, Inc."

On April 24, 1950, William W. Burch conveyed all interest acquired in the last-mentioned conveyance to appellant, Courseview, Incorporated.

As a result of the foregoing instruments, the material portions of which have been set forth, appellant Courseview, Incorporated, and appellee Mid-Coast Oil Company are in opposition each to the other claiming ownership of the "purchase rights" reserved by Amos L. Beaty & Company, Inc., under the provisions of paragraph 7 of the 1939 assignment by that company to Phillips Petroleum Company. Appellee Phillips Petroleum Company asserts ownership of such "purchase rights" to be in Mid-Coast Oil Company in defense of appellant's suit for specific performance. Since the conveyances under which Mid-Coast Oil Company claims ownership of such "purchase rights" are in point of time senior to those under which Courseview, Incorporated, claims ownership, the issue is resolved into a determination of the effect insofar as the "purchase rights" provided for in the 1939 contract are concerned, of the April 1946 conveyance from Amos L. Beaty & Company, Inc., to William W. Burch and the April 22, 1946, conveyance from William W. Burch to Mid-Coast Oil Company.

By pleading appellant alleged that the foregoing conveyances "show on their face that they cover only specific properties described and did not convey or affect any rights arising under paragraph 7 of the contract of February 16, 1939, and that the right of Beaty & Company under paragraph 7 of the 1939 contract is now held and owned by plaintiff through a regular chain of conveyances."

By alternative pleading appellant alleged that the 1946 conveyances from Beaty & Company to Burch and from Burch to Mid-Coast are ambiguous and "that the conveyance from William W. Burch to Mid-Coast Oil Company should be reformed so as to carry out the prior agreement and intention of the parties, which was to

.convey only the specific mineral interests therein described and was not intended by either of said parties to cover or convey any interest which the said William W. Burch might have or thereafter acquire, to purchase properties in the Chocolate Bayou Field in Brazoria County, Texas by virtue of the interest created by Paragraph 7 of the 1939 contract."

At the conclusion of the evidence offered in the trial court, the appellant moved for an instructed verdict against both appellees, which motion in so far as the points now being considered are concerned was based upon the proposition that the deed from Burch to Mid-Coast Oil Company dated April 22, 1946, as a matter of law did not convey any "purchase rights" under the 1939 contract, and that the undisputed evidence established that appellant was the owner and holder of such purchase rights. Appellant's motions were overruled and the cause was submitted to the jury upon special issues of fact, included among which were Issues Nos. 52 and 53 in the following words:

"Special Issue No. 52

"Do you find from a preponderance of the evidence that by the deed from William W. Burch, dated April 22, 1946, William W. Burch, did not intend to convey or assign to Mid-Coast Oil Company purchase rights or option rights created by Paragraph 7 of the February 16, 1939 contract?

"Answer 'He did so intend to convey or assign' or 'He did not so intend to convey or assign'

"Special Issue No. 53

"Do you find from a preponderance of the evidence that by the deed from Amos L. Beaty & Company, Inc. to William W. Burch, dated April 19, 1946, Amos L. Beaty & Company, Inc. did not intend to convey or assign to William W. Burch purchase rights or option rights reserved to Amos L. Beaty & Company, Inc. in paragraph 7 of the February 16, 1939, contract?

"Answer 'It did so intend to convey or assign' or 'It did not so intend to convey or assign' "

In response to both issues the jury answered: "It [or he] did so intend to convey or assign."

In their argument under counter-point No. 1 appellees take the position (1) the jury findings are to the effect that said rights passed to the Mid-Coast Oil Company, and (2) the jury issues and the verdict thereon are not questioned by appellant and such findings have ample support in the evidence. It is our interpretation of their argument that they contend that in support of point of error No. 32 appellant is limited to the assertion that the April 22, 1946, deed from Burch to Mid-Coast Oil Company is unambiguous and that the only proper construction to be placed thereon compels the conclusion that it did not convey any purchase rights under the 1939 contract. While we agree that appellant's point of error No. 32 includes that assertion we are of the opinion that the point as framed is broad enough to present in addition thereto the proposition that even if the deed from Burch to Mid-Coast Oil Company is ambiguous, nevertheless the trial court should have held, as a matter of law, that the deed did not convey any purchase rights because the undisputed evidence extrinsic the instrument itself compels the conclusion that the grantor therein so intended; however, the correctness of our opinion on this question is immaterial because we have concluded that appellant is correct in its primary assertion, namely, that the deed is unambiguous, and that a proper construction of its terms compels the conclusion that it did not convey any purchase rights under the 1939 assignment from Beaty & Company to Phillips Petroleum Company.

■ We see no point in stating, or in citing, authority for, the general rules of law applicable to the construction of written instruments. All litigants appear to be in agreement that the cardinal principle

is that the intention of the grantor shall govern; that such intention must be found where possible within the instrument itself when examined in the light of the circumstances surrounding its execution, and that only when the intention of the grantor cannot be so determined is evidence extrinsic the instrument to be considered in determining that intention. Neither do we consider the authorities cited in the briefs of the litigants to be sufficiently factually analogous to the case before us to be of material assistance. We arrive at our conclusion by the following process.

■ Insofar as material to the present problem, the 1939 assignment from Beaty & Company to Phillips Petroleum Company accomplished three results. First, it transferred from grantor to grantee certain specifically described and identified oil and gas leases covering property in the Chocolate Bayou area in Brazoria County. Second, it reserved to the grantor a fractional interest in the net profits to be derived from the operation of such leases. Third, it created (by paragraph 7) reciprocal contractual rights in the parties to the instrument to purchase fractional interests in any royalty or mineral interest or fee title which might be thereafter acquired by either party within the area. As we view it, the "purchase rights" created by paragraph 7 are distinct, separate and unrelated to either the leasehold estates assigned to the grantee or the profit sharing interest reserved by the grantor. By the express provisions of paragraph 7 of such instrument, it is clear to us that the words "royalty, or mineral interest or fee title" necessarily refer to interests other than those assigned and transferred from grantor to grantee in that instrument. The purchase rights created by that paragraph are personal to the parties thereto and their assigns, with respect to which the specific properties transferred and assigned are neither burdened nor benefited. The purchase rights are applicable to other and different properties, and the contract evidenced by paragraph 7 does not in any manner cover or affect the specific properties transferred and assigned by the grantor to the grantee.

The conversion agreement of 1943 affects, and only purports to affect, the fractional interest in the net profits reserved by the grantor in the 1939 assignment by converting such interest into a ⅛₂ overriding royalty. The legal characteristics of the "purchase rights" created by paragraph 7 of the 1939 assignment are not in any manner altered by such conversion agreement.

It seems clear to this Court that the purpose and intent of the 1946 conveyances from Beaty & Company to Burch and from Burch to Mid-Coast Oil Company is to assign and transfer from Beaty & Company through Burch to Mid-Coast Oil Company the beneficial interest then owned by Beaty & Company in and to the specific properties described in the exhibits attached to such conveyances, which interest, at that time, by virtue of the conversion agreement, amounted to a ⅛₂ overriding royalty. No other intention is discernible consistent with applicable rules of construction.

Appellees' argument that the 1946 conveyances transferred the "purchase rights" created by paragraph 7 of the 1939 assignment rests exclusively and entirely upon the words contained in the paragraph, heretofore quoted, which follows the list of properties set forth in Exhibit B attached to such conveyances, and particularly upon the words " * * * all its right, title and interest in and to any * * * contracts or agreements covering or in any manner affecting *said properties.*" We feel that our conclusion that the contractual rights created by paragraph 7 of the 1939 assignment are, by the very terms of the paragraph, applicable to properties other than and different from those specifically transferred by the assignment, coupled with the express language quoted above from the 1946 conveyances which limits

the contracts or agreements thereby conveyed to those "covering or in any manner affecting *said properties"*, demonstrates conclusively that the grantor did not intend by the 1946 conveyances to convey "purchase rights". (Emphasis ours.) As to what agreements or contracts were intended by the quoted paragraph, appellant points out, "Exhibit B of said deed described eight (8) separate tracts with Tract 8 being described as 'a $\frac{1}{32}$ overriding royalty interest.' It is clear from the instrument itself that the recitation 'Together, in each case, with all its right, title and interest in and to any additional, correction, or amended leases, extensions, renewals, contracts or agreements covering or in any manner affecting said properties,' was placed at the end of the property descriptions for the sole and only purpose of assuring to the grantee all of the rights and benefits necessary to the full enjoyment of the specific properties conveyed. To give such recitation any other construction is wholly inconsistent with the other provisions of the deed and would be in conflict therewith. Most, if not all, of the properties described and conveyed were in pooled units and it is obvious that under such circumstances there would, from time to time, be executed by the operator of the unit additional instruments such as those mentioned in said recitation which would affect the properties conveyed. Such recitation contains no words of grant or conveyance and was obviously not placed in the descriptions for the purpose of enlarging the property granted by the deed for it is not a part of the conveying portion of the instrument but is only a portion of the description."

The following observations will serve, we think, to demonstrate the correctness of the conclusions stated. In its brief Phillips Petroleum Company stated, "Tract 8 of Exhibit 'B' to these deeds is the $\frac{1}{32}$ override, and the description of leases thereunder is practically identical with the description of leases on Exhibit 'A' of the 1939 contract, * * *." We mention this because in our

opinion it is the identity of the specific properties described in the 1939 assignment and in the 1946 conveyances which has led the appellees into what we consider to be an incorrect interpretation of the 1946 conveyance. As the owner of a $\frac{1}{32}$ overriding royalty in each of the specific properties described in such instruments Beaty & Company had the unquestioned right to alienate all or any part of such royalty as applicable to any or all of such properties. If it be presupposed that instead of transferring such $\frac{1}{32}$ royalty as to all of such specific properties Beaty & Company had transferred the $\frac{1}{32}$ override applicable to two or more but less than all of the specific properties, it is perfectly apparent that the paragraph which follows the list of specific properties contained in Exhibit B of the 1946 conveyances would be entirely apt to such a conveyance. It could by no means be contended that by the use of such concluding paragraph the grantor intended thereby to convey all the purchase rights created by paragraph 7 of the 1939 assignment. Neither could it be successfully contended that by the employment of such paragraph the grantor intended to convey any proportionate interest in such purchase rights as there would manifestly be no means by which the proportion intended to be conveyed could be computed. We do not see how then it can be said that the paragraph upon which appellees here rely evidences the intention for which they contend, because of the mere circumstance that the 1946 conveyances transferred the $\frac{1}{32}$ override applicable to all of the specific properties assigned by the 1939 assignment.

We are of the opinion that appellant's point of error No. 32 is well taken and must be sustained. We hold that the trial court erred in failing to hold as a matter of law that the deed from William W. Burch to Mid-Coast Oil Company did not convey any purchase option right under the 1939 contract.

As previously noted, Amos L. Beaty & Company and Phillips Petroleum Company on June 1, 1943, executed an agreement

converting Beaty's one-half of the reserved one-fourth net profit interest under the 1939 contract into a $\frac{1}{32}$ overriding royalty. As also previously noted, this 1943 conversion agreement did not affect Beaty's purchase option rights under paragraph 7 of the 1939 contract. Included among the properties transferred by Beaty to Phillips by the 1939 contract were a 60-acre tract referred to by the litigants as the Overly Tract and a 76.63-acre tract referred to as the Bookout Tract. Division orders forwarded by Phillips to Beaty in 1945 failed to credit Beaty with its interest in these two tracts. Investigation revealed that these two tracts had been omitted from the 1943 conversion agreements. To correct such omission Phillips caused to be prepared and delivered to Beaty in New York two supplementary conversion agreements, one covering each of such tracts; which agreements were executed by S. W. Farnsworth as president and by Ethel Gorman as secretary of Amos L. Beaty & Company. These agreements are dated July 3, 1945, and are referred to by the litigants as the 1945 conversion agreements. The legal effect of such 1945 conversion agreements is (1) to convert Beaty's one-half of the one-fourth net profits interest into a $\frac{1}{32}$ overriding royalty, and (2) to terminate Beaty's right to purchase any after acquired interest in such tracts which it might otherwise have under paragraph 7 of the 1939 contract.

Prior to the occurrence of the events above outlined the leasehold estates in the Overly and Bookout Tracts which Beaty had transferred to Phillips by the 1939 contract had expired under the terms of the leases creating such estates. After such termination Phillips acquired the fee title to the Overly Tract by deed dated July 29, 1943, and to the Bookout Tract by deed dated July 17, 1943. While Beaty's actual or constructive knowledge of such purchases is highly disputed between the litigants, it appears to be admitted that Phillips did not formally notify Beaty of its purchases under the terms of paragraph 7 of the 1939 contract.

On May 29, 1950, appellant having, as we have held, acquired the interest of Beaty in and to the purchase option rights created by paragraph 7 of the 1939 contract, filed suit against Phillips seeking, in so far as the Overly and Bookout Tracts are concerned, specific performance of such purchase option rights. In avoidance of the terminative effect of the 1945 conversion agreements referable to the Overly and Bookout Tracts, appellant alleged that the verbal agreement between Beaty and Phillips was that the Bookout and Overly Tracts were to be put under the terms of the 1943 conversion agreement, and that the execution of the 1945 conversion agreements applicable to such tracts, in so far as such agreements terminated Beaty's purchase option rights under paragraph 7 of the 1939 contract, was procured by fraud on the part of Phillips. Appellant sought reformation of the 1945 conversion agreements so that they would conform to the verbal agreement. Phillips, in addition to alleging non-ownership by appellant of any purchase option rights, also pleaded the four year statute of limitation in bar both of the reformation and the specific performance pleas.

In response to special issues submitted after trial of the issues thus joined, the jury found in substance as follows:

"(1) That the agreement of Beaty and Company and Phillips was that the Bookout and Overly tracts were to be put under the terms of their 1943 conversion agreement. (Special Issue 17)

"(2) That the execution of the 1945 conversion agreements was procured by the fraud of Phillips. (Special Issues 3-47)

"(3) That on and prior to July 3, 1945 a relation of trust and confidence existed between Beaty and Company and Phillips. (Special Issue 1)

"(4) That a relation of trust and confidence existed between Beaty and Company and its successors in interest under the 1939 contract and Phillips. (Special Issue 2)

"(5) That Beaty and Company had no knowledge, prior to May 28, 1946 that the 1945 conversion agreements as written did terminate their purchase option rights insofar as the Bookout and Overly tracts were concerned (Special Issues Nos. 66, 74, 82, 90)

"(6) That Beaty and Company was in possession of facts or information as would have put an ordinarily prudent person upon inquiry which if diligently pursued would have led to the discovery, prior to May 28, 1946, that the 1945 conversion agreements as written did terminate its rights to purchase any interest from Phillips in the Bookout and Overly tracts of land. (Special Issues 67, 75, 83, 91)

"(7) That Beaty and Company failed to exercise reasonable diligence to discover the legal effect of the 1945 conversion agreements. (Special Issues 68, 76, 84, 92)

"(8) That if Beaty and Company had exercised reasonable diligence it would have discovered the legal effect of the 1945 conversion agreements prior to May 28, 1946. (Special Issues 69, 77, 85, 93)"

Appellant's points of error Nos. 1 to 5, inclusive, are directed to the asserted error of the trial court in submitting to the jury any issues upon appellee's plea of limitation in bar of appellant's right of reformation, and in rendering judgment on the findings responsive thereto. We overrule such points.

The agreements sought to be reformed were dated July 3, 1945. This suit was filed May 29, 1950, ten months and twenty-six days more than four years thereafter. The agreements were signed by Farnsworth and Gorman, the president and secretary, respectively, of Beaty & Company. Executed duplicate originals of the agreements were held by Beaty & Company at all material times subsequent to their execution. That fact, together with the inferences properly deducible therefrom, are, in our opinion, alone sufficient to support the jury's verdict summarized in items (6), (7), and (8) above.

The case of Mathis v. Stockdick, Tex. Civ.App., 189 S.W.2d 106, 108, decided by this Court, was one involving facts strikingly similar to those in the instant case. The only difference of legal significance lies in the fact that in that case no relationship of trust and confidence was found to exist. Judge Monteith, writing for this Court, uses the following language:

"It is equally well settled that where a person has a right in property and he claims that fraudulent statements or misrepresentations have been made in connection with the rights in or to the title thereto and the records or instruments relating to such title or rights are open to him he must exercise reasonable diligence to discover such defect; and if by the exercise of such diligence he could have discovered such defects or facts and would have known of his right, he is held to have known it and limitations will run against his claim from the time he could have made such discovery by the exercise of ordinary diligence. Sherman v. Sipper, supra [137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263]; Gerfers v. Mecke, 28 Tex.Civ.App. 269, 67 S.W. 144, writ refused; Pitman v. Holmes, 34 Tex.Civ.App. 485, 78 S.W. 961."

The import of the language is more fully comprehended when it is pointed out that this Court affirmed the judgment of the trial court which was rendered non obstante veredicto. In the abstract, the effect of the decision is to say that the signing of an instrument, though fraudulently induced, together with the retention of a copy thereof, in the absence of any excuse for the failure to read the instrument and thereby discover the fraud, and in the absence of any act or conduct *subsequent* to the execution of the contract which would tend to prevent the defrauded party from examining it, constitutes lack of diligence as a matter of law, and that limitation runs from the date of signing.

The Supreme Court unqualifiedly refused a writ of error. (Emphasis ours.)

■■ The fact that a relation of trust and confidence exists between the parties does not change the rule that diligence in discovering fraud is required, but affects only the application of the rule. 28 Tex. Jur., page 162, paragraph 73. As we understand the authorities cited in that text, the existence of the relationship is but a circumstance, in the light of which diligence is to be measured. The standard of diligence required is that which a person of ordinary prudence would exercise under the same or similar circumstances. In Mathis v. Stockdick, supra, it is held that conduct such as that of appellant's predecessor in title here constitutes lack of diligence as a matter of law in an arm's length transaction. Appellant here contends that such conduct, where a relation of trust and confidence exists, constitutes no evidence at all of lack of diligence. To so hold would, in our opinion, be the equivalent of holding that the relation of trust and confidence relieves the defrauded party of all duty to exercise diligence. Such is not the law. Appellant's predecessor here was under a duty to exercise that degree of diligence which would be exercised by a person of ordinary prudence under the same or similar circumstances. By reading the 1945 conversion agreements at the time of execution, Beaty & Company could have discovered the fraud found by the jury to have been practiced by Phillips. With the instrument in its possession, a *subsequent* examination would likewise have revealed the fraud. Beaty & Company, through its representatives, failed both to read the instruments at the time of execution and to later examine the instruments. Both failures constitute some evidence of lack of diligence, by the exercise of which the fraud could have been discovered. Whether or not such failures constitute a lack of "reasonable diligence" is a question for the jury. The jury, as heretofore noted, found that Beaty & Company failed to exercise reasonable diligence, and that had Beaty & Company exercised reasonable diligence it would have discovered the fraud more than four years prior to the institution of this suit. Both findings have support in the record, and effectively establish the four year statute of limitation as the bar to appellant's right to reform the 1945 conversion agreements.

In Clopton v. Cecil, Tex.Civ.App., 234 S.W.2d 251, which is relied upon by appellant, the defrauded party not only offered evidence excusing his failure to discover the fraud at the time of executing the instrument there sought to be reformed, but also offered evidence of acts and conduct on the part of the defrauding party *subsequent* to the date of execution which would tend to prevent him from examining the instrument. Judge Monteith points out the absence of such proof in Mathis v. Stockdick, supra, as it is likewise, either undisputedly or under supported findings of the jury, absent in this case. As we construe Clopton v. Cecil, supra, it holds only that proof, such as above mentioned, was sufficient to support the trial court's finding that reasonable diligence had, in that case, been exercised. The case does not hold that a failure to read when signing, and a failure to later examine, an instrument, are no evidence of lack of diligence. On the contrary, by necessary implication the case holds that evidence of such failures raised an issue of fact to be determined by the trier of the facts.

Luginbyhl v. Thompson, Tex.Civ.App., 11 S.W.2d 380, another case cited by appellant, is likewise distinguishable from this case in that there, there was evidence of acts and conduct on the part of the party against whom reformation was sought subsequent to the date of execution of the contract which was held to excuse the failure on the part of the defrauded party to examine the instrument and thereby discover the fraud or mistake.

Neither are we able to say that the findings of the jury in response to the issues submitted on appellee's plea of limitation

are against the overwhelming weight and preponderance of the evidence. To extensively review the mass of evidence bearing upon this question would unduly extend this already lengthy opinion. We consider it sufficient to point out that the record establishes that both Farnsworth and Gorman, who executed the 1945 conversion agreements for Beaty & Company, were experienced business executives. Farnsworth testified to twenty years' experience in the oil business, during which period he had been an officer or director of numerous corporations. These circumstances, we think, have great probative value in passing upon the question of whether or not his admitted act of signing and acknowledging such agreements, without reading them, and thereupon depositing them in the files of the company of which he was president, without thereafter examining them, constituted reasonable diligence. We think the jury verdict as complained of is amply supported.

Appellant further complains of the form of the issues as submitted respecting due diligence. Typical of such issues is No. 67, which is in the following language:

"Do you find from a preponderance of the evidence that S. W. Farnsworth was not in possession of any fact or information as would have put an ordinarily prudent person upon inquiry which, if diligently pursued, would have led to the discovery by him, prior to May 28, 1946, that the agreement dated July 3, 1945, terminated the right of Amos L. Beaty & Company, Inc. to purchase from Phillips Petroleum Company any interest in the Bookout tract of land?

"Answer 'He was in possession of same' or 'He was not in possession of same.' "

■ The substance of the complaint is that the statute of limitation did not begin to run merely because appellant was in "possession" of any fact or information which would put an ordinarily prudent person upon inquiry, but that it is necessary that appellant have "knowledge" of such fact or information. In support of such contention, appellant cites Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377; Atkins v. Dodds, Tex.Civ.App., 121 S.W.2d 1010; and Isaacks v. Wright, 50 Tex.Civ.App. 312, 110 S.W. 970. After carefully examining the cited cases, we conclude that appellant's contention, while it may find support in the field of semantics, has little, if any, support in the field of law. On the contrary, we find the courts treating "possession" of facts or information as being the same thing as "knowledge" of facts or information. In Atkins v. Dodds, supra [121 S.W.2d 1017], for instance, upon which appellant relies, we note the court quoting with approval the following statement from Dean v. Dean, Tex.Civ.App., 214 S.W. 505:

"In Dean v. Dean, supra, the court holds: 'In such case the child may continue to trust the father, without using any means to discover the fraud until it has, without such inquiry, come into *possession* of such facts as would put an ordinarily prudent person upon inquiry, at which time and not before, if the child has arrived at the age of maturity, it is bound, as any other person would be, to reasonably pursue such inquiry, and at which time, and not before, the statute of limitations will begin to run.' " (Emphasis supplied.)

None of the authorities which appellant cites gives to the distinction the determinative effect for which appellant contends. Viewed from a practical standpoint, it occurs to us that "possession", without further qualification, would include mental possession, which is the same as knowledge. In any event, even if the issue as submitted is technically erroneous, we are unable to say that the error was "reasonably calculated to cause and probably did cause the rendition of an improper judgment", as we would be required to say in order to reverse the judgment on the ground complained of. Rule 434, Texas Rules of Civil Procedure.

■ Finally, appellant contends that the 1945 conversion agreements do not, as written, terminate any purchase rights. This contention does not appear to be seriously urged, and we see no merit in it. The 1945 conversion agreements provide that each owner executing same "in lieu of all other interests held by him or it under said contract dated February 16, 1939, in so far as the lands above described are concerned," should thereafter own an overriding royalty interest. We think this language clearly terminates the purchase option rights created by paragraph 7 of the 1939 contract in so far as the Bookout and Overly tracts are concerned.

With the exception of points of error Nos. 1 to 5, inclusive, and No. 32, which we have already discussed, and of Points Nos. 33, 34, and 35, which we will hereafter discuss, all of appellant's remaining points complain of errors in the submission of, and the rendition of judgment on, special issues relating to appellee's plea of limitation in bar of appellant's right of specific performance of its purchase option with respect to the Bookout and Overly tracts. Our ruling that the 1945 conversion agreements terminated appellant's purchase option rights as to such tracts, and that appellant's right of reformation is barred by the four year limitation statute, Vernon's Ann.Civ.St. art. 5529, renders such remaining points immaterial to the determination of this appeal. Rule 453, T.R.C.P. With the exception of Points Nos. 6, 7, 8, 15, 16, and 17, all of such remaining points present questions of law. Therefore, in the event that the Supreme Court should decide that we are in error in our conclusions relative to Points Nos. 1 to 5, inclusive, that Court will be in a position to pass upon such remaining points. Appellant's Points Nos. 6, 7, 8, 15, 16, and 17, however, assert that certain findings by the jury are against the overwhelming weight and preponderance of the evidence. Our determination of such points is held to be final. In order, therefore, that, should the Supreme Court take jurisdiction of this case, it may be in a position to make complete disposition of it, we feel that it is appropriate that we pass upon those points of error as to which our jurisdiction is final.

The particular findings complained of are those wherein the jury found that Beaty & Company was in possession of facts or information more than four years prior to the institution of this suit such as would put an ordinarily prudent person upon inquiry which, if diligently pursued, would reveal the purchase by Phillips of the Bookout and Overly Tracts, and that Beaty & Company failed to exercise such reasonable diligence. We overrule the points above numbered. Again, without reviewing the evidence at length, we point out that Farnsworth testified that he knew from 1939 on that Phillips was acquiring royalties, mineral interests, and fee titles in the Chocolate Bayou area, but that he made no inquiry about them. The witness Steig testified that he informed both Farnsworth and Gorman of the purchase of the Bookout and Overly Tracts in 1945. Farnsworth executed two deeds in 1946, both of which contained recitations that Phillips owned the minerals under the Overly Tract. There is a mass of evidence which would support findings to the contrary of those which the jury made. However, in view of the evidence which we have outlined above, we do not feel that we can say that the findings complained of are against the overwhelming weight and preponderance of the evidence.

Our ruling with respect to appellant's Points Nos. 6, 7, 8, and 15, 16, and 17, is made only to facilitate a complete disposition of this litigation in the event that the Supreme Court should hold that under the record the defense of limitation is available to Phillips Petroleum Company in bar of appellant's suit for *specific performance* of its purchase option rights with respect to the Bookout and Overly Tracts. Since the question is immaterial to our disposition of the appeal, we neither express nor imply any opinion as to the availability of such defense.

Appellant's Point No. 33 asserts that the trial court erred in failing to render judgment for specific performance of appellant's purchase option rights with respect to certain overriding royalty acquired by Phillips in the Hooper and Wade Survey. The factual basis of the point is as follows:

At some time prior to September, 1945, an oil, gas and mineral lease and the leasehold estate created thereby became owned in part by E. G. Thompson, in part by Roy B. Siler, and in part by Walter Morrison. On February 19, 1945, Thompson assigned his interest in said lease to Phillips Petroleum Company, but reserved an overriding royalty of ⅛ of the oil, gas and other minerals produced. On May 16, 1945, Siler assigned his interest in the lease to Phillips, but reserved a ½₂ overriding royalty. On May 14, 1945, Morrison assigned his interest in the lease to Phillips, but reserved a ½₂ overriding royalty. Thereafter, in October of 1945, Phillips purchased from Thompson, Siler and Morrison all or part of the overriding royalties which they had respectively reserved in their previous assignments to Phillips. It is this overriding royalty as to which appellant seeks specific performance.

It will be remembered that paragraph 7 of the 1939 contract grants reciprocal purchase options to the parties thereto as to royalty or mineral interest, or fee title, purchased by either party, but expressly excludes lease from such option rights; providing that leases should be purchased only for Phillips with funds furnished by Phillips and with its approval in advance. Phillips, in answer to appellant's Point No. 33, asserts that the overriding royalties purchased by it from Thompson, Siler, and Morrison, having been originally carved out of the working interest in the leasehold estates which it had previously acquired, merged into such leasehold estate and was not a royalty within the comprehension of paragraph 7 of the 1939 contract. We are in accord with such contention.

It is our opinion that the matter is determinable by looking to the intent and purpose of Phillips in acquiring the overriding royalties here in issue. These overrides, as stated, were carved out of the working interest in the leasehold estate which Phillips had previously purchased. As such they constituted a burden or charge against the operating interest of Phillips in and to such leasehold. It is our view that by purchasing such outstanding overriding royalties under the circumstances above outlined, Phillips Petroleum Company demonstrated an intent and purpose only to free its operating interest in such leasehold of the burden or charge against it, and that it had no intent or purpose of purchasing such overrides merely for the purpose of owning royalties. We do not intend to hold that paragraph 7 of the 1939 contract does not grant purchase option rights with respect to overriding royalties as such. Had Phillips acquired these overriding royalties without having first purchased the leasehold operating interest, we would be of the opinion that appellant would have the right to enforce specific performance of its purchase option rights with respect thereto. While factual analogy is difficult to state, we consider this situation to be somewhat analogous to one wherein it be presupposed that purchase option rights were granted with respect to mortgages, but excluded with respect to fee titles. If, under such presupposed state of facts, a party to such option contract were to purchase a fee title, which was then subject to an outstanding mortgage indebtedness, and would thereafter pay off and discharge the mortgage, we do not think it could be contended that the other party to the agreement would have the right to purchase an interest in such mortgage. The discharge of the mortgage did not constitute a purchase. To the same extent, in our opinion, the discharge of the burden and obligation of the outstanding overriding royalties did not constitute a

purchase by Phillips, within the meaning of paragraph 7 of the 1939 contract.

Appellant's Point No. 34 asserts error on the part of the trial court in failing to render judgment for specific performance of its purchase option rights with respect to the fee title acquired by Phillips Petroleum Company to the "Andrau" tract of land. The record reflects that Phillips purchased this 40-acre tract of land in 1947, subject to a mineral reservation in the deed of all of the minerals to the grantor. While this land lies within the area specified in paragraph 7 of the 1939 contract, Phillips acquired only the surface estate. It is our opinion that a proper construction of the 1939 contract, and particularly paragraph 7 thereof, leads to the conclusion that the parties to it were dealing with estates and interest in minerals only, and that it cannot properly be contended that the purchase option rights thereby created applied to surface estates.

Appellant's Point No. 35 complains that the court erred in failing to render judgment for an undivided $^{400}/_{25625}$ interest in the purchase option rights of the 1939 contract. It appears that in the liquidation of Amos L. Beaty & Company one stockholder, Andrau, the owner of 400 shares of stock, refused to accept his share of properties in kind. In order to effect a liquidation, Beaty & Company conveyed an undivided $^{400}/_{25625}$ interest in certain properties to Ethel Gorman, who in turn conveyed such interest to Andrau. The other $^{25225}/_{25625}$ interest, it will be recalled, was conveyed by Beaty & Company to Burch, and by Burch to Mid-Coast Oil Company. The heirs and representatives of Andrau, who is deceased, having been made parties defendant in the trial court, filed a disclaimer as to any interest in the purchase option rights. In view of our previous ruling with reference to appellant's Point of Error No. 32, its Point No. 35 is moot, it being manifestly immaterial whether this fractional interest in such rights was acquired by the April 24, 1950, conveyance from Burch, or by the disclaimer of the successors in interest to Andrau.

For reasons stated in this opinion, we hold that the judgment of the trial court is erroneous to the extent that it provides that appellant take nothing against the appellee, Mid-Coast Oil Company, as well as against those parties defendant in the trial court who are named in the appeal bond filed herein by appellant and who, by virtue of the take-nothing judgment, might be held to own any interest in the purchase option rights created by the 1939 contract, which rights as between the parties before this Court we hold to be owned by appellant. In all other respects we hold that the judgment of the trial court, in so far as it is appealed from, is correct. We order that the cause be remanded to the trial court, with instructions to enter judgment in accordance with this opinion.

Reversed and remanded, with instructions.

CODY, J., not sitting.