## EDSALL v̇. EDSALL et al.
### No. 2847.

Court of Civil Appeals of Texas. Eastland.
March 23, 1951.
Rehearing Denied May 4, 1951.

Wm. Andress, Jr., Dallas, for appellant.

L. D. Hawkins, Breckenridge, E. G. Thornton, E. H. Griffin, Olney, for appellees.

LONG, Justice.

Arthur Ben Edsall instituted this suit against A. B. Edsall and wife, Lucile Edsall, to recover an interest in a herd of cattle. Arthur Ben Edsall is the son of A. B. Edsall, by a former marriage. Hattie Reynolds Edsall, mother of Arthur Ben, and A. B. Edsall, were married in 1910. Arthur Ben Edsall was born in 1915. His mother died intestate in 1937, leaving certain community debts. Arthur Ben was the only child of A. B. Edsall and Hattie Reynolds Edsall, deceased. A. B. Edsall married Lucile Edsall in 1939. A. B. and Hattie Reynolds Edsall, during their marriage, accumulated certain community property and at the time of the death of Hattie Reynolds Edsall, there was a herd of cattle belonging to said community estate consisting of 235 cows, 41 heifers, 93 mixed calves, 61 steer calves and 6 bulls. The community estate at that time owed certain debts. A. B. Edsall, upon the death of his first wife, took complete charge of all of said cattle. In 1940 A. B. Edsall sold from said herd enough cattle to pay off all the community debts and did with the proceeds of said cattle so sold, pay off and discharge all of said community debts. After the sale of said cattle there remained in the herd 150 cows, 105 calves and 4 bulls. Thereafter, during the year 1940, A. B. Edsall made a division of said herd with his son, Arthur Ben. In said division he delivered to Arthur Ben 50 cows, 35 calves, and 2 bulls and retained for himself 100 cows, 70 calves and 2 bulls. Arthur Ben alleges that he was entitled to one-half of the cattle on hand at the time of said division. He sought to recover a judgment against A. B. Edsall and Lucile Edsall for one-fourth of any and all monies received by them for cattle sold in which plaintiff was interested and prayed for a partition to him of one-fourth of the cattle now on hand in the possession of A. B. Edsall and Lucile Edsall. A. B. Edsall answered by general denial. Lucile Edsall answered in addition to a general denial by pleading the two year statute of limitation. Art. 5526, Vernon's Annotated Civil Statutes. Arthur Ben sought to avoid the effect of said plea of limitation by alleging fraud on the part of his father, A. B. Edsall in the division of the cattle and that such fraud was not and could not have been discovered by him in the exercise of reasonable diligence until a short time before this suit was filed. Upon a trial before the court without a jury, Arthur Ben Edsall was denied recovery of a money judgment but judgment was entered in his favor for the title and possession of an undivided one-fourth interest in the herd. From this judgment, Lucile Edsall alone has appealed.

Appellant's first point is as follows: "When A. B. Edsall failed to plead limitation on behalf of the second community against his son's claim to an interest in that community's cattle, his wife, the appellant, after institution of divorce suit against him could plead limitations independently in so far as her interest in the community was concerned."

At the time of the institution of this suit and at the time of the trial of this case, there was pending in the District Court of Throckmorton County a divorce suit between A. B. Edsall and Lucile Edsall.

A. B. Edsall did not plead limitation. Appellant did file such a plea. The above point states a correct proposition of law. Appellant had the right to plead limitation in this case regardless of whether such plea was filed by her husband. The court passed specifically upon appellant's plea of limitation. Among the conclusions of law filed by the trial court, we find the following: "Defendant Lucile Edsall is in no better position to plead limitation herein than her husband would be were he pleading limitation. Therefore, her plea of limitation is not well taken and should be

overruled; and plaintiffs' cause of action against her is not barred."

■ The trial court came to a correct conclusion of the law as applied to the facts in this case. Lucile Edsall was not a purchaser of the property but acquired whatever interest she had therein by reason of the fact she was the wife of A. B. Edsall. She had no better title to the property than her husband had. Until the divorce suit was filed A. B. Edsall had complete control of the community property. He·had the right to make the division of the cattle with his son in 1940. Lucile Edsall is bound by such division and if it is set aside as to A. B. Edsall, it necessarily follows it will be and should be set aside as to Lucile Edsall. There is no error pointed out in appellant's first point.

Appellant's second point is as follows: "When the adult married rancher son, Arthur Ben Edsall, accepted less than half of the community cattle of his intestate mother, knowing that his father claimed ownership of the remainder, and acquiesced in that division for almost ten years, limitation bars him as against his stepmother, who did not participate in that division, from any claim to a share in the cattle of the second community, which claim he first raised after filing of her divorce action against his father."

■ The evidence conclusively shows that appellees' cause of action is barred by limitation unless the statute is tolled by reason of fraud. Fraud prevents the running of the statute of limitation until it is discovered or by the use of reasonable diligence should have been discovered. Underwood v. Coolgrove, 59 Tex. 164; Port Arthur Rice Milling Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S.W. 926; R. W. Williamson & Co. v. Texas & P. Ry. Co., 106 Tex. 294, 166 S.W. 692; Glenn v. Steele, Tex.Sup., 61 S.W.2d 810. The trial court found the following facts:

"7. Prior to and at the time of said division of cattle in 1940 defendant, A. B. Edsall, for the purpose of inducing plaintiff herein to accept the cattle delivered to him in said division as satisfaction of his claim to his part of his mother's estate in

so far as cattle were concerned, represented to plaintiff (a) that he, A. B. Edsall, owned certain cows at the time of his marriage with plaintiff's mother, and (b) that, because of such prior ownership by defendant A. B. Edsall, of the 150 cows then on hand plaintiff was entitled to only 50 of them. Said representation that A. B. Edsall owned certain cows when he married plaintiff's mother was true. Said representation that plaintiff was entitled to only 50 of the 150 cows then on hand was untrue.

\* \* \* \* \* \*

"11. Plaintiff. did not know at the time of said division in 1940, otherwise than through said representations so made to him by his father, either (a) that his father had any cows when he married plaintiff's mother, (b) how many cows his father had when he married plaintiff's mother, (c) how many cattle his father had at the time said representations were made or how many of such cattle were cows, or (d) how many cows plaintiff was entitled to on account of cattle owned by his father and mother at the time of her death.

"12. Plaintiff accepted said 50 cows as being his share of the cattle to which he was entitled on account of the community interest in cattle owned by his mother at the time of her death, but in doing so he believed and relied solely on said representations so made to him by his father; and but for such representations plaintiff would not have so accepted said 50 cows. At that time a relation of complete trust and confidence existed between plaintiff and his father, that is to say, plaintiff then reposed in his father complete confidence and trusted him implicitly, and he had no reason to, and did not, doubt the rectitude of any representation so made to him by his father.

"13. Said relation of trust and confidence continued at least down to a time in the year 1949, after Lucile Edsall had filed her suit for divorce, when plaintiff in consultation with his father's counsel in said divorce suit received advice from them to such effect that his suspicion was aroused as to whether he had received from his father in said division in 1940 all the cows

to which he was entitled as the sole heir of his mother; whereupon he employed counsel of his own with the result that this suit in his behalf was filed.

"14. Throughout the period from said division in 1940 down to the time plaintiff's suspicion was so aroused while in consultation with his father's counsel said relation of trust and confidence continued to exist, and during that period nothing occurred and no circumstance existed which was reasonably calculated to, or did, excite the suspicion of plaintiff as to the correctness of his father's representations to him or which was reasonably calculated to, or did, prompt plaintiff to make any inquiry as to whether said representations were true or false. Plaintiff was not negligent in failing during that period to discover how many cattle he was entitled to as sole heir of his mother. He could not and would not by the exercise of reasonable diligence have discovered during said period how many cattle he was entitled to in the division of 1940 as the sole heir of his mother."

 There is evidence to support the finding of the trial court that A. B. Edsall made false representations to his son, Arthur Ben, at the time of the division of the herd. Unless the evidence is such that reasonable minds cannot differ as to its effect the question as to whether a party has exercised diligence in discovering fraud is for the trier of the facts. 28 Tex.Jur., page 301; Ruebeck v. Hunt, 142 Tex. 167, 176 S.W.2d 738, 150 A.L.R. 775. The evidence in this case is such that reasonable minds might differ and was sufficient to sustain the finding of the trial court that Arthur Ben Edsall exercised reasonable diligence in discovering the fraud perpetrated upon him by his father. There was a confidential relationship existing between A. B. Edsall, the father, and Arthur Ben Edsall, the son. Arthur Ben testified that he had complete confidence in his father; that he did not know the number of cattle on hand in 1940 at the time the division of the cattle between him and his father was made; that he did not know how many cattle he was entitled to other than what his father told him. There never was but one herd of cattle down to the time of the division between the father and son which said herd was completely under the control of the father, A. B. Edsall.

 The fact that a relationship of trust and confidence existed between parties does not change the rule that diligence in discovering fraud is required. However, it does affect the application of the rule. We quote the following from 28 Tex.Jur. at page 162, which we believe is applicable to the facts in this case:

"Where special confidence is reposed in the trustee, and a fiduciary relationship exists, * * * diligence does not exact as prompt and searching inquiry into the conduct of the trustee as if strangers were involved or parties on equal terms were dealing with each other at arm's length.

"A similar rule prevails as to transactions between husband and wife, principal and agent, parent and child, father-in-law and son-in-law, and attorney and client."

In the case of Atkins v. Dodds, Tex.Civ.App., 121 S.W.2d 1010, 1017, the Amarillo court, in discussing a situation similar to the one we have here, quoted with approval from the work of Judge Speer in his Law of Marital Rights, Third Edition, on page 123, as follows: "Considering the very intimate relations and the unlimited confidence that the child must of necessity impose in the parent, courts of equity at all times feel bound to guard and protect the relation of parent and child from every semblance of fraud and undue influence. Business transactions between parent and child are reviewed with a jealous vigilance and after the transaction is scrutinized closely, the court will, upon a showing of the least fraud or unfairness, feel impelled to set such transaction aside."

Again, in the same case, the court quotes from Isaacks v. Wright, 50 Tex.Civ.App. 312, 110 S.W. 970 (Writ Denied): "'"In a number of carefully considered cases it is held that the mere fact that the defrauded party has the opportunity or power to investigate and discover the fraud

is not sufficient to charge him with notice or knowledge but that he must be cognizant of such facts as would cause an ordinarily intelligent and prudent man to make an investigation which, if pursued, would disclose the fraud, and that a mere suspicion of fraud is not sufficient to constitute a 'discovery' which would set the statute in motion." ' See, also, Hand et al. v. Errington et al., Tex.Civ.App., 233 S.W. 567, affirmed by the Supreme Court, [Tex.Com. App.] 242 S.W. 722; Commercial Bank & Trust Co. v. Buntain, et al., Tex.Civ.App., 278 S.W. 503; Stone v. Burns, et al., Tex. Civ.App., 200 S.W. 1121; Ebberts et al. v. McLean, et al., Tex.Civ.App., 68 S.W.2d 1077, affirmed 128 Tex. 573, 98 S.W.2d 352." See also Fitz-Gerald v. Hull, Tex. Sup., 237 S.W.2d 256.

 Limitation did not begin to run against appellee until the fraud was, or by the exercise of ordinary diligence, could have been discovered. The trial court found that appellee did not discover said fraud until a short time before this suit was filed and could not have discovered it sooner in the exercise of reasonable diligence. These findings have support in the evidence and we are bound thereby.

 There is no showing of any fact or circumstance that was brought to the attention of Arthur Ben Edsall that would have put him on inquiry, until a short time before this suit was filed. After Lucile Edsall filed suit against A. B. Edsall for divorce and recovery of her interest in the community estate, Arthur Ben Edsall, while in conversation with his father's lawyer, acquired information which caused him to believe he had not received his full share of the cattle belonging to the community estate of his father and mother. He then employed an attorney of his own choosing, and immediately filed this suit. Under the record in this case, we are not warranted in holding that appellee was barred as a matter of law from recovery by the two year statute of limitation. We have found no reversible error in the points presented and the judgment of the trial court is accordingly affirmed.

The judgment is affirmed.