COURSEVIEW, INCORPORATED V. PHILLIPS PETROLEUM COMPANY

No. A-6286. Decided December 4, 1957.
Rehearing overruled March 19, 1958.
Second motion for rehearing overruled April 30, 1958.
(312 S.W. 2d Series 197)

398

*Andrews, Kurth, Campbell & Bradley, F. L. Andrews, James R. Drury,* and *James W. Dilworth,* all of Houston, for Courseview, Incorporated. *Woodul, Arterbury & Wren,* and *Escar R. Wren,* all of Houston, for Mid-Coast Oil Company, Petitioners.

The court of Civil Appeals erred in affirming the judgment of the trial court that petitioner's cause of action was barred by the four year statute of limitation; in holding that the mere retention of an executed copy of an instrument, the execution of which was secured by fraud perpetrated by virtue of the relationship of trust and confidence, is alone sufficient to charge the defrauded party with a lack of reasonable diligence in failing to discover the fraud; in failing to render judgment for petitioner for specific performance of its purchase option rights with respect to the overriding royalty interest acquired by Phillips Petroleum Company and in failing to render judgment for petitioner for specific performance of its purchase option rights. Hexter v. Pratt, Com. of App., 10 S.W. 2d 693; Flack v. First Natl. Bank of Dalhart, 148 Texas 495, 226 S.W. 2d 628; Smith v. Allison, 26 Texas 186; Curdy v. Stafford, 30 S.W. 551.

*R. L. Foster, H. D. Turner,* of Bartlesville, Okla., *R. K. Batten, E. H. Brown, Tarlton Morrow* and *Vinson, Elkins, Weems & Searls,* all of Houston, for respondents.

MR. JUSTICE WALKER delivered the opinion of the Court.

This is a controversy over the ownership and enforcement of purchase option rights under a contract executed in 1939 by Amos L. Beaty & Company, Inc., Victor H. Borsodi, and Phillips Petroleum Company. By the terms of the contract, Beaty and Borsodi assigned to Phillips some thirty-five oil, gas and mineral leases covering approximately 3,000 acres of land in Brazoria County known as the Chocolate Bayou Prospect, reserving to themselves one-fourth of the net profits derived by Phillips from the development and operation of the lands covered by the leases, and also agreed upon demand to execute to Phillips leases on certain mineral fee interests owned by them in such Prospect. Paragraph 7 of the agreement provides that if either party should purchase "any royalty or mineral interest or fee title" within an area specified in the contract, the other party would be given written notice of the purchase and would have twenty days thereafter within which to elect to purchase from the acquiring party a specified fractional interest therein.

The parties to this action are Courseview, Incorporated, Mid-Coast Oil Company, Phillips Petroleum Company, and others whose names are not material. Courseview, claiming to have succeeded to the rights of Beaty under paragraph 7 of the contract, brought suit against Phillips to require a disclosure of purchases made in the designated area and to enforce specific performance of its right to acquire an interest therein. At the conclusion of the evidence on the first trial, the district judge decided that Mid-Coast was a necessary party and declared a mistrial.

After the joinder of Mid-Coast as a party defendant, the suit developed into a controversy between Courseview and Mid-Coast over the ownership of the Beaty purchase rights, and between Courseview and Phillips as to the former's right to specific performance thereof with respect to various properties. On the second trial there was a directed verdict that Courseview take nothing, but the Court of Civil Appeals reversed and remanded the cause for a new trial. Courseview, Inc. v. Phillips Petroleum Co., 258 S.W. 2d 391 (wr. ref. n.r.e.).

Following the remand, the case was again tried and submitted to the jury, and judgment was again entered that Courseveiw take nothing. The Court of Civil Appeals concluded that Courseview is entitled to no relief against Phillips, but remanded the cause to the trial court for the entry of judgment establish-

ing Courseview's ownership of the purchase rights involved in the suit. 298 S.W. 2d 890. Courseview and Mid-Coast each filed an application for writ of error, and both applications were granted. As the case reaches us, Courseview is claiming the right to purchase an interest in the following properties acquired by Phillips subsequent to the execution of the 1939 contract: (1) the Overley and Bookout tracts; (2) certain overriding royalty interests; and (3) the Andrau tract. It is our opinion that the Bookout and Overley tracts and the overriding royalty interests are subject to the purchase rights and that Courseview is entitled to specific performance with respect thereto, but we approve the other express holdings of the Court of Civil Appeals which have been attacked here. The judgment of the intermediate court will accordingly be affirmed, but the trial court will be governed by this opinion in entering its judgment.

It is necessary first to determine the ownership of the rights created by paragraph 7 of the contract. Agreements executed by Beaty and Phillips in 1943 and 1945 converted the former's net profit interest under the contract into a 1/32 overriding royalty. This overriding royalty and other property were conveyed by Beaty to W. W. Burch and by the latter to Mid-Coast in 1946. Although the purchase rights are not explicitly mentioned in or conveyed by these instruments, Mid-Coast contends that they passed under the provisions of one of the clauses therein. In 1949 the officers of Beaty executed to W. W. Burch a deed purporting to convey all of the corporation's property and assets of every kind, the instrument reciting that the corporation had been duly dissolved and that the grantee was its sole stockholder and entitled as such to distribution of all its remaining assets. The following year Burch conveyed to Courseview all rights owned by him in any contracts between Beaty and Phillips.

The controversy as to the ownership of the purchase rights thus turns upon the effect of the 1946 deeds from Beaty to Burch and from the latter to Mid-Coast. Since the two instruments are in substantially the same form, we shall notice only the provisions of the first deed. By its terms the grantor conveyed "an undivided 25225/25625ths interest in all and singular the property and premises lying and being situated in the State of Texas and County of Brazoria, more particularly set forth and described in Exhibits A and B hereto annexed and made a part hereof." Exhibit A which describes one-half of the 7/8 working interest in an oil and gas lease executed by B. E. Nor-

vell to Pure Oil Company, is not material to this suit, but it does contain a general provision in substantially the same language as that quoted below from Exhibit B.

Exhibit B describes eight separate tracts. Tracts 1 through 7 are fractional mineral and royalty interests in various parcels of land in Brazoria County, and the first six appear in each instance to be one-half of the mineral and royalty interests on which Beaty and Borsodi agreed in the 1939 contract to execute leases to Phillips on demand. The eighth tract is described as follows:

"*Tract 8. Chocolate Bayou Override, Brazoria County, Texas.* A 1/32 overriding royalty interest in the oil, gas and other minerals in, under, produced and to be produced from the hereinafter described tracts of land situated in Brazoria County, Texas, said overriding royalty interest having been created by virtue of agreements between Amos L. Beaty and Company, Inc., and Phillips Petroleum Company; said tracts of land being described in and covered by the following described oil, gas and/or mineral leases, to-wit: * * *."

■ Following this language there are listed a large number of mineral leases, most of which are described simply by date, names of the lessors and lessee, and a reference to the deed records. This list includes some leases which were assigned to Phillips under the terms of the 1939 contract and others which apparently are renewals of leases covered by that portion of the agreement. Immediately after the description of the leases appears the following provision upon which Mid-Coast relies to support its contention that the purchase rights were conveyed by the deed:

"Together, in each case, with all its right, title and interest in and to any additional, correction, or amended leases, extensions, renewals, contracts or agreements covering or in any manner affecting said properties."

Mid-Coast argues that this provision was placed in the deed for the purpose of conveying all of the grantor's right, title and interest in *any* agreement covering or in any manner affecting the properties previously described, that the 1939 contract is one such agreement, and hence that all of the grantor's right, title and interest in such contract, including the purchase rights created thereby, passed under the deed. In the alternative it says that the conveyance is at least ambiguous and that the

findings of the jury require that this construction be adopted. The jury found that by the 1946 deeds Beaty and Burch each intended to convey the option rights, but that Mid-Coast did not intend to purchase the same from Burch. We agree with the Court of Civil Appeals that the deed is unambiguous and does not convey the purchase rights, and therefore do not find it necessary to determine the legal effect of the jury findings. See opinion on motion for rehearing in Smith v. Allison, 157 Texas 220, 301 S.W. 2d 608.

The quoted provision does not purport to embrace all of the grantor's right, title and interest in and to any and all leases and contracts covering or affecting the properties previously described. Instead it refers only to "any *additional, correction or amended leases,* * * * contracts or agreements covering or in any manner affecting said properties." If given its literal meaning, therefore, the language would not include leases, contracts or agreements previously mentioned in the deed or exhibit. It will be recalled that the overriding royalty interest is described in Exhibit B as having been "created by virtue of agreements between Amos L. Beaty & Company, Inc. and Phillips Petroleum Company." This clearly appears to be a reference to the original contract and the subsequent conversion agreements, but any doubt as to the meaning of the parties is removed when we consider the contract which the deed was given to effectuate. The overriding royalty is there explicity described as having been created by the 1939 contract and the conversion agreements.

Since the original contract is one of the instruments referred to by the parties in identifying the specific properties conveyed by the deed, it is not an additional, correction or amended contract or agreement within the literal meaning of the concluding paragraph of Exhibit B. The reason for including the stipulation in the deed becomes apparent when we consider the setting in which the instrument was drafted and executed. The parties were dealing with a large number of interests in realty, some of which were affected by several different contracts. Some of the properties were subject to pooling agreements not mentioned in the conveyance. Several of the leases originally assigned by Beaty to Phillips had expired, but renewal leases had been obtained and the overriding royalty had been treated as continuing in effect thereunder. While the parties could specify in detail the rights and interests to be conveyed to the grantee under any leases or agreements mentioned in the deed, they evidently concluded that it was not practicable

to list all of the instruments affecting the properties conveyed or describe the rights of the grantor thereunder. They wished to make it plain, however, that the grantee was to have all rights necessary to the full enjoyment of the specific properties conveyed, and placed the quoted provision after the property descriptions in each exhibit for this purpose.

■ Although created by the contract that gave rise to the overriding royalty, the purchase rights are entirely separate from, and are not necessary or convenient to the ownership or enjoyment of, the specific properties conveyed by the deed. It seems clear to us then that such rights do not fall within either the letter or spirit of the quoted provision, and there is no basis for saying that the parties intended for them to pass to the grantee under the deed.

Mid-Coast also contends that the 1949 deed from Beaty to Burch and the later conveyance from Burch to Courseview were ineffective and passed nothing. The Beaty deed, which was executed in the name of the corporation by its president and attested by the secretary with the corporate seal attached, recites that the corporation was organized under the laws of Delaware and had been duly dissolved. There is no pleading or proof as to the laws of Delaware, and Mid-Coast says that we must presume that the applicable law is the same as that of Texas. It then argues that the deed could not be effective because it was not executed by the president and directors as statutory trustees in accordance with the provisions of Art. 1388, Texas Rev. Civ. Stat. 1925.

■ The record shows that Burch was the only stockholder of the corporation. Upon its dissolution, therefore, all of the assets of the company became his property, subject only to the rights of creditors and the statutory powers of the president and directors to settle its affairs. Peurifoy v. Wiebusch, 132 Texas 36, 117 S.W. 2d 773. The rights of creditors or the powers of the statutory trustees are not involved in this suit, and there is no evidence of any unpaid debts owing by the dissolved corporation. There can be no doubt then that Burch became the owner of the purchase rights either by conveyance or by operation of law.

The deed to Courseview conveys all rights and claims of every kind owned by Burch under any contract theretofore entered into by Beaty and Phillips "acquired by me under that certain deed * * * executed by said Amos L. Beaty and Com-

pany, Inc. unto William W. Burch, dated April 14, 1949 * * *."
Mid-Coast says that nothing passed by the later conveyance
because Burch had acquired nothing under the 1949 deed from
Beaty. We do not agree. The parties regarded the 1949 deed as
necessary and effective to vest in Burch title to all assets of the
corporation not previously disposed of, and it is our opinion that
Burch and Courseview intended by the 1950 deed to convey all
rights then owned by him in contracts between Beaty and Phil-
lips and which passed to him as part of the residual assets of
Beaty. As between Mid-Coast and Courseview, therefore, the
latter is the owner of the purchase rights regardless of the legal
efficacy of the 1949 deed.

This disposes of all points in the application for writ of
error filed by Mid-Coast and brings us to the controversy be-
tween Courseview and Phillips. Our statement of the facts bear-
ing on Courseview's first group of points is taken largely from
the opinion of the Court of Civil Appeals. As previously noted,
Beaty and Phillips executed an agreement on June 1, 1943, con-
verting Beaty's one-half of the reserved one-fourth net profit
interest under the 1939 contract into a 1/32 overriding royalty.
This conversion agreement does not purport to deal with or af-
fect the purchase option rights created by paragraph 7 of the
original contract.

Included among the properties assigned by Beaty to Phil-
lips under the terms of the 1939 contract were leases on a 60-
acre tract referred to as the Overley tract and a 76.63-acre
tract designated by the parties as the Bookout tract. These two
leases expired under their own terms in 1941. Phillips acquired
the fee title to both tracts of land in 1943 but did not formally
notify Beaty of the purchases in accordance with the provisions
of paragraph 7 of the contract.

Division orders forwarded by Phillips to Beaty in 1945
failed to credit the latter with any interest in the two tracts,
and investigation disclosed that the land had been omitted from
the 1943 conversion agreement. Beaty through its officers then
executed two supplementary conversion agreements dated July
3, 1945, each covering one of such tracts, which: (1) converted
Beaty's net profit interest into a 1/32 overriding royalty, and
(2) terminated Beaty's rights under paragraph 7 of the original
contract with respect to the two tracts.

Courseview alleged that the execution of these 1945 conver-
sion agreements, in so far as they terminated the purchase

rights, was procured by fraud on the part of Phillips. It sought reformation of the two agreements and specific performance of the right to purchase an interest in the Bookout and Overley tracts. Phillips pleaded the four-year statute of limitations as a bar to both actions. The suit was filed on May 29, 1950.

Although much of the testimony bearing on the fraud issues is disputed, there is evidence from which the jury could have found that when the omission of the two tracts from the division orders was discovered, an employee of Beaty, Miss Ethel Gorman, conferred with M. H. Steig and other employees of Phillips; that Phillips represented to her that the two tracts had been inadvertently omitted from the 1943 conversion agreement and that it then had only oil and gas leases on the land, and did not disclose its prior purchases of the property; that after her return to New York, Steig advised that his company had agreed to place the two tracts under the terms of the 1943 contract; that Phillips caused the two supplemental conversion agreements to be prepared and Steig personally carried the same to New York for execution by Beaty; that Steig presented the two documents to S. W. Farnsworth, the president of Beaty, and informed him that their sole purpose and effect was to place the Bookout and Overley tracts under the terms of the 1943 agreement so Beaty could be credited with its 1/32 overriding royalty on such tracts; and that Farnsworth did not carefully examine the instruments but relied on Steig's representations and executed the same without reading them in their entirety.

By their answers to special issues submitted by the trial court, the jury found among other things: (1) that a relationship of trust and confidence existed between Beaty and Phillips; (2) that the execution of the 1945 conversion agreements was procured by the fraud of Phillips; (3) that Beaty had no knowledge prior to May 28, 1946, that the agreements as written did terminate its purchase rights as to the Bookout and Overley tracts; (4) that Beaty was in possession of facts or information as would have put an ordinarily prudent person upon inquiry, which if diligently pursued would have led to the discovery prior to May 28, 1946, that the agreements as written did terminate its purchase rights with respect to the two tracts; (5) that Beaty failed to exercise reasonable diligence to discover the legal effect of the agreements; (6) that by the exercise of reasonable diligence Beaty would have discovered the legal effect of the instruments prior to May 28, 1946; (7) that Beaty and its successors did not learn of Phillips' acquisition of the Bookout and Overley tracts until March, 1949; and (8) that Beaty

was in possession of information that would have put an ordinarily prudent person upon inquiry which if diligently pursued would have led to the discovery of such purchases prior to May 28, 1946.

The jury finding that a relationship of trust and confidence existed between Beaty and Phillips has not been questioned. By its first three points, Courseview contends that as a matter of law its cause of action for reformation is not barred by limitations. Briefly stated, its position is: (1) that there is no evidence to show that Beaty was ever aware of any fact or circumstance that would have excited inquiry by an ordinarily prudent person similarly situated, and (2) that since the parties occupied a relationship of trust and confidence, Beaty was under no duty to exercise diligence to discover the fraud until it acquired, subsequent to the fraud, knowledge of some fact sufficient to put it on inquiry.

■ The rule is well settled that the statute of limitations begins to run at such time as the fraud is discovered, or by the exercise of reasonable diligence might have been discovered. In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts which would have been discovered by a reasonable prudent person similarly situated. And a failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party. Sherman v. Sipper, 137 Texas 85, 152 S.W. 2d 319, 137 A.L.R. 263; Mathis v. Stockdick, Texas Civ. App., 189 S.W. 2d 106 (wr. ref.) ; Bass v. James, 83 Texas 110, 18 S.W. 336.

■ On the other hand, limitation does not begin to run in favor of a trustee and against the cestui until the latter has notice of a repudiation of the trust, and there is no duty to investigate at least until the cestui has knowledge off acts sufficient to excite inquiry. See Slay v. Burnett Trust, 143 Texas 621, 187 S.W. 2d 377; Moore v. Waco Building Ass'n, Texas Civ. App., 45 S.W. 974 (wr. ref.). Money coming into the hands of public officials to be held and paid over in accordance with law is usually deemed to be held in trust within this rule. See 54 C.J.S. Limitations of Actions, Sec. 179, p. 161. It has accordingly been held that the negligence of the commissioners in failing to discover defalcations of a county official can be invoked only after such commissioners had knowledge of facts that would have put a person of ordinary prudence on inquiry. Hogan v. Hidalgo County, Texas Civ. App., 246 S.W. 2d 709 (no writ) ;

Powell v. Archer County, Texas Civ. App., 198 S.W. 1037 (wr. ref.). Some of our intermediate courts have expressed the view that when a relationship of trust and confidence exists, the defrauded party is under no duty to use any means to discover the fraud until he has notice of facts that would put a person of ordinary prudence on inquiry. See Atkins v. Dodds, Texas Civ. App., 121 S.W. 2d 1010 (wr. Dis. agr.) ; [wr. of err. dismissed upon agreed motion, 133 Texas 673] ; Dean v. Dean, Texas Civ. App., 214 S.W. 505 (no writ).

■ It is perhaps more accurate to say that the existence of a relation of trust and confidence does not change the rule that diligence in discovering the fraud is required but does affect the application of the rule. See Edsall v. Edsall, Texas Civ. App., 238 S.W. 2d 285 (wr. ref. n.r.e.) ; First State Bank of Bangs v. Visart, Texas Civ. App., 259 S.W. 987 (no writ) ; 28 Texas Jur. Limitation of Actions, Sec. 73, p. 162. By entering into fiduciary relations, the parties consent as a matter of law to have their conduct measured by the standards of the finer loyalties exacted by courts of equity. See Johnson v. Peckham, 132 Texas 148, 120 S.W. 2d 786, 120 A.L.R. 720. The fiduciary relationship is therefore one of the circumstances to be considered in determining whether fraud might have been discovered by the exercise of reasonable diligence. It may excuse the defrauded party from taking action that would be required in an arm's-length transaction or from making as prompt or searching investigation as might otherwise be expected. In some situations there is no legal duty to use means available for discovering the fraud, and this is such a case. We are not prepared to say, however, that one in a relationship of trust and confidence is always justified as a matter of law in neglecting every precaution until something occurs to arouse his suspicions.

■ Each case must rest on its own facts, and the record in this case establishes conclusively that Beaty's failure to discover the fraud more than four years before suit was filed was not due to any lack of diligence on its part. The sources from which the information might have been obtained were: (1) its own files, (2) Phillips, and (3) the public records. The evidence shows that Farnsworth was an experienced business executive and had been engaged in the oil business for more than twenty years. At the time the agreements were executed, he knew that they had been prepared by or under the direction of Phillips and affected his company's interest in valuable oil property. After glancing at them and noting that one covered the Bookout tract and the other the Overley tract and that there was a

clause converting the profit-sharing interest into an override, he asked Steig whether the rest of the agreements put the leases on the same basis as the 1943 conversion agreement and was assured that they did. He then signed without further examining the documents. Copies of the two agreements were helds in Beaty's files at all times subsequent to their execution. The suit was filed ten months and twenty-six days more than four years after the agreements were executed.

The relationship of the parties and the fraudulent representations as found by the jury undoubtedly excused the failure of Beaty's officers to read the agreements at the time of their execution. They were entitled to rely upon Steig's statements and cannot be charged with want of diligence in failing to verify what he told them. There would then be no reason for them to examine the copies unless they became aware of some fact or circumstance sufficient to excite inquiry.

On the question of whether Beaty was put on inquiry, we are concerned only with facts which came to its knowledge prior to May 28, 1946. Nothing transpired before this date that could have caused anyone immediately to suspect that the conversion agreements were otherwise than as represented by Steig. There is, however, another channel by which it might have been led to a discovery of the fraud. Knowledge that Phillips had bought the Bookout and Overley tracts would naturally provoke inquiry as to why Beaty had not been notified of the purchases. Under such circumstances, the true facts regarding the agreements would ultimately be brought to light by the exercise of proper diligence.

Phillips calls attention to the evidence from which the trier of fact might have concluded that Farnsworth and Gorman did know of the purchase of the Bookout and Overley tracts more than four years before suit was filed, but the jury has found to the contrary. It was in 1949 that Beaty or its successors first learned that Phillips had acquired title to the land. In that year the owners of net profits under the 1939 contract who had not converted to an overriding royalty employed an accountant to audit Phillips' books and records. The purchase of the Bookout and Overley tracts came to light in the course of this audit and evidently was reported to Burch, who then owned the interest now held by Courseview. Burch promptly notified Phillips that he elected to purchase an interest in the land and in anything else that had been acquired in the area covered by the agreemnt.

The jury also found that Beaty's officers were put on inquiry and in the exercise of reasonable diligence should have discovered prior to May 28, 1946, that Phillips had bought the two tracts of land. Information regarding some of these matters might have been obtained from the public records and perhaps by inquiry from Phillips. In view of the relationship of the parties and Phillips' contractual obligation to give notice of purchases in the designated area, Beaty cannot be charged with lack of diligence in failing to examine the records or make inquiry of Phillips until it had knowledge of some fact that should have aroused its suspicions. Farnsworth learned as early as 1939 that Phillips was purchasing property in the Chocolate Bayou Field, but he did not know that it had bought any in the smaller area covered by paragraph 7 of the original contract. Since Phillips had expressly contracted to give notice of purchases in the designated area, Beaty was entitled to rely on the agreement until there was some reason for it to believe that Phillips might not comply with its obligations thereunder. The fact that purchases had been made in the vicinity would not cause anyone in Beaty's position to suspect that Phillips would not live up to the contract and give the required notice if and when any property was acquired in the specified area.

None of the information received by Beaty prior to May 28, 1946, would tend in any way to arouse suspicion or cause investigation by a person of ordinary prudence similarly situated as to either the effect of the 1945 conversion agreements or the acquisition of property in the area covered by the original contract. We hold, therefore, that Beaty's failure to discover either the fraud or Phillips' purchases in the designated area was not due to any want of diligence, and that Courseview's cause of action for reformation of the 1945 conversion agreements is not barred by the four-year statute.

Phillips also argues that the cause of action for specific performance arose when it acquired the Bookout and Overley tracts in 1943 and therefore is barred by the four-year statute of limitations. We do not agree. Under the terms of the contract, either party was free to acquire mineral and royalty interests and fee titles in its own name, with its own funds and for its own benefit, subject only to the right of the other party to participate therein if it elected to do so. It was stipulated that the party acquiring any property in the specified area would notify the other party in writing, and that the latter would have twenty days thereafter in which to elect in writing whether or not to purchase an interest therein as provided in the contract.

The instrument simply creates an option, a continuing offer which would become a bilateral contract of sale only when accepted by the optionee in the manner and within the time agreed upon by the parties. It follows that Phillips was under no duty to convey an interest in the overriding royalties until the other party made its election to purchase the same.

This is not a case in which the plaintiff has delayed the performance of some preliminary act upon which the right to sue is dependent and which he had the power to perform. The parties agreed that Beaty and its successors would have a period of twenty days after written notice from Phillips in which to exercise the option. The jury found that Phillips did not give notice of the purchases in accordance with the provisions of the contract and that Beaty and its successors first knew of them in March, 1949. We have held that Beaty's failure to learn of them was not due to any lack of diligence. Phillips could have given the required notice and thereby compelled an election within twenty days thereafter. Instead of doing this it remained silent, and the optionee did not learn of the purchases until fourteen months before suit was filed. The latter could not be expected to make an election until it knew that Phillips had acquired the property, and the cause of action for specific performance did not arise before the option was exercised. We hold, therefore, that such action is not barred by the statute of limitations. See Toledo P. & W. R. R. v. Brown, 375 Ill. 438, 31 N.E. 2d 767; Hall v. Roberts 58 Hun. 539, 12 N.Y.S. 480.

It is unnecessary to consider Courseview's fifth point, which raises a question of burden of proof not expressly passed upon by the Court of Civil Appeals. The remaining points require a construction of the 1939 contract to determine the types of property that are subject to the purchase rights. By its terms, such rights apply to "any royalty or mineral interest or fee title" thereafter purchased by either party within the designated area. It was also stipulated that all leases thereafter acquired by Beaty in the area would be purchased only for and with funds furnished by Phillips. The Court of Civil Appeals concluded that Beaty and its successors would have no right to purchase an interest in leases acquired by Phillips, and the parties do not contend otherwise.

In 1945 Phillips acquired certain overriding royalty interests in lands within the designated area, and Courseview claims the right to purchase an interest therein. At the time of such acquisition Phillips was the owner of the leasehold estate out of which

the overriding royalties in question had been carved. It argues that the purchase of these royalty interests simply completed its ownership of the leasehold estate, and that such purchases are therefore not subject to the purchase rights. We have concluded that royalty interests of this character are covered by the contract.

The parties agreed without limitation of any kind that any royalty or mineral interest would be subject to the purchase rights. Although an overriding royalty is carved out of the working interest, it nevertheless is one type of royalty and is also an interest in the minerals. From a reading of the contract it is plain that the parties intended by paragraph 7 to create reciprocal rights except with respect to the fractional share which each might purchase in property acquired by the other. The right of one party to acquire its specified share in a mineral or royalty interest purchased by the other was to be no different from the right of the latter in the event the situation were reversed. If Beaty had purchased the overriding royalties here in controversy, or if Phillips had acquired the same at a time when it did not own the leasehold estate, the other party clearly would have the right to purchase an interest therein. We think the parties must have intended for Beaty to have the same right when the royalty was purchased by Phillips after acquiring the leasehold estate. Phillips also argues that the cause of action for specific performance with respect to the overriding royalties is barred by the four-year statute, but we have disposed of this question in our discussion of the Bookout and Overley tracts.

■ Courseview's final point attacks the holding of the Court of Civil Appeals that the purchase by Phillips of the surface only of the Andrau 40-acre tract is not subject to the option rights granted by the 1939 contract. It argues that the parties specified the exact interests they were dealing with and plainly agreed that the rights would apply to three things: (1) royalties, (2) mineral interests, and (3) fee titles. It then says that Phillips did acquire a fee title to the surface of the Andrau tract and that the purchase rights are applicable and should be enforced.

While the contract is subject to this construction, it is entirely possible that the words "any royalty or mineral interest or fee title" were used to convey a somewhat different meaning. By that language the parties may have intended to make the purchase rights applicable to any interest or fee title in either royalty or minerals. A reading of the contract discloses that they were dealing primarily in minerals and mineral interests and

were not interested in surface estates as such. Their principal purpose in making the agreement was to own and obtain development of the minerals then held or thereafter acquired by them in the prospect area. From a consideration of the entire instrument, we believe they did not intend for the purchase rights to apply to a surface estate acquired apart from any interest in the minerals.

Paragraph 7 of the contract requires the optionee, in the event the option is exercised, to pay the other party the specified fractional share of the cost of the property. In its purchase of the Bookout and Overley tracts, Phillips acquired in each instance the fee title for a consideration that covered both the surface and mineral estates. The contract provides no method for allocating the cost between the two estates acquired under these circumstances. We are led to the conclusion, therefor, that the option rights do extend to the surface estate when thus acquired with a mineral or royalty interest or fee title in the same tract of land, and Phillips does not contend otherwise.

The trial court will enter judgment: (1) establishing Courseview's ownership of the Beaty purchase option rights as directed in the concluding paragraph of the opinion of the Court of Civil Appeals, and (2) granting Courseview reformation of the 1945 conversion agreements and specific performance of its right to purchase, in accordance with the terms of the 1939 contract, an interest in the Bookout and Overley tracts and the overriding royalty interests acquired by Phillips in the tract of 108.8 acres out of Section No. 1, Hooper and Wade Survey. In all other respects the judgment of the district court, in so far as it is appealed from, is correct. The costs on appeal will be divided equally between Phillips and Mid-Coast.

The judgment of the Court of Civil Appeals reversing and remanding the cause to the trial court for entry of judgment is affirmed, but the instructions of the intermediate court are modified to conform to this opinion.

Opinion delivered Dec. 4, 1957

MR. JUSTICE CULVER dissenting in part.

I agree with the Court of Civil Appeals that the findings of the jury, to wit, that Beaty was in possession of facts that would have put an ordinarily prudent person upon inquiry that it diligently pursued, would have led to the discovery, prior

to May 28, 1946, that the agreements as written did terminate its purchase rights with respect to the two tracts, and that Beaty failed to exercise reasonable diligence to discover the legal effect of the agreement and would have done so by the exercise of reasonable diligence, are supported by the evidence.

I therefore dissent in part.

Opinion delivered Dec. 4, 1957.

### ON MOTION FOR REHEARING

MR. JUSTICE WALKER delivered the opinion of the Court.

Our original opinion directed that judgment be entered granting Courseview, among other relief, specific performance of its right to purchase an interest in the Bookout and Overley tracts and certain overriding royalty interests referred to by the parties as the Thompson royalty. In their motions for rehearing, Phillips and Courseview raise for the first time a number of questions regarding the interest which the latter is entitled to ac quire in these properties and the former's duty to account for production therefrom. A detailed discussion of all their contentions would serve no purpose except to lengthen this opinion, but our views on some of the questions must be stated for the guidance of the trial court.

Phillips argues that since leases on the Bookout and Overley tracts were assigned to it by paragraph 2 of the 1939 contract, it was entitled under the terms of the contract to acquire and hold an undivided $7/8$ mineral interest in each of these tracts free and clear of the purchase rights created by paragraph 7. It takes the position that Courseview may now purchase only $1/8$ of $1/8$ of the Bookout tract and $1/8$ of $1/32$ of the Overley tract, the latter having been acquired by Phillips subject to a $1/32$ nonparticipating royalty outstanding in persons who are not parties to this suit. After reviewing all the provisions of the contract, it is our opinion that Courseview is entitled to purchase one-eighth of all the title, interest and estate which Phillips acquired in each of the two tracts.

■ Courseview requests us to instruct the trial court to require Phillips to file a verified statement disclosing any purchases, other than the Bookout, Overley and Andrau tracts and the Thompson royalty, in the area specified in paragraph 7 of the contract. An order requiring such disclosure was entered by the

trial court in 1951, but Courseview through its attorneys wrote Phillips that it would accept a letter signed by a responsible official of the latter company and would not insist upon the filing of a verified statement. It went on to say, however, that this was without prejudice to its right to sworn disclosures and full accounting in the event it was successful in this suit. Phillips thereupon furnished a letter stating that it had not acquired any mineral interest in the designated area except the Bookout and Overley tracts and a royalty interest theretofore conveyed by it to Burch. Courseview then advised Phillips that the letter was accepted as substantial compliance with the order of the trial court and would "serve the purpose until after the trial is completed."

Since Courseview expressly accepted the letter as sufficient for the purposes of the present suit, it is in no position to insist upon further disclosure in this proceeding. Its right to seek and the power of the trial court to order the same in another action are not prejudiced by this suit or by the correspondence mentioned above.

We are also requested to instruct the trial court to require Phillips to account to Courseview for the latter's share of all production and income from the Bookout and Overley tracts and Thompson royalty from the time each was acquired by Phillips. The latter insists that since the cause of action for specific performance did not arise until the option was exercised, the right to an accounting should date from that time.

This is not a case in which the optionor has had the use of or received the income from the optioned property at a time when the optionee had no right to or simply failed to exercise his option to purchase. Here the parties were in a fiduciary relationship and Phillips has produced minerals from the land during a period when, through Phillips' own default, Beaty and its successors did not even know that they were entitled to acquire an interest under the terms of the 1939 contract. Under such circumstances, Phillips is chargeable in equity as a constructive trustee and held Beaty's share of the production and other income and revenues from the property for the benefit of the latter in the event the option was exercised. When the option agreement was converted under a bilateral contract of sale, therefore, Courseview became entitled to an accounting for its share of all production and income from the respective properties from and after the date each was acquired by Phillips.

It should also be noted that 1/32 overriding royalty, which was accepted by Beaty in lieu of its net profits interest under the 1939 contract and which was later purchased by Midcoast, plays no part in the accounting between Phillips and Courseview. This royalty interest represents the consideration for the original assignment of the leases by Beaty to Phillips and does not affect the purchase rights under paragraph 7 of the contract or the interest which Courseview is entitled to acquire in the Bookout and Overley tracts. The money paid to Beaty and its successors by virtue of their ownership of such royalty will not be charged to Courseview in the accounting with Phillips.

Courseview's motion for rehearing is granted to the extent that the trial court is directed, in addition to the instructions set out in our original poinion, to require Phillips to account to Courseview for the latter's share of all production, income and revenues derived from or credited to the Bookout and Overley tracts and the Thompson royalty from the date each was acquired by Phillips. In all other respects, the several motions for rehearing filed herein are overruled.

Opinion delivered Mar. 19, 1958.

Second motion for rehearing overruled April 30, 1958.