Gary R. SMITH, Independent Executor of the Estate of Willa Mae Holtzclaw, Appellant,

v.

Dorothy M. FLINN, Independent Executrix of the Estate of John H. Flinn, Appellee.

No. 13-96-601-CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 26, 1998.

---

6.  902 S.W.2d 962 (Tex.1995).

L. Scott Smith, Corpus Christi, for Appellant.

Nathan A. East, Portland, for Appellee.

Before FEDERICO H. HINOJOSA, Jr., YANEZ and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

This is an appeal from the granting of summary judgment in a legal malpractice case. We affirm.

Willa Mae Holtzclaw ("Holtzclaw") sued John H. Flinn ("Flinn") for malpractice arising out of a legal matter Holtzclaw retained Flinn to handle for her.[1] Holtzclaw alleged Flinn failed to investigate or sue contractors who had bilked her out of thousands of dollars for unnecessary repairs and improvements to her home, and allowed the statute of limitations to run on any claims she may have had against the contractors.

■ Flinn asserted his entitlement to summary judgment on two bases: limitations and laches. Where, as here, the trial court's order granting summary judgment does not specify the ground or grounds relied upon, the judgment is to be affirmed if any of the theories advanced by the movant are meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996); *State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 380 (Tex.1993).

### The Statute of Limitations in Legal Malpractice Actions

■ The contractors made repairs and improvements to Holtzclaw's home in 1984 and 1985; thus, a four-year statute of limitations period applied to any action against the contractors for breach of contract. TEX. CIV. PRAC. & REM.CODE ANN. § § 16.004, 16.051 (Vernon 1986 and Supp.1998); *Harrison v. Bass Enter. Prod. Co.*, 888 S.W.2d 532, 537 (Tex.App.—Corpus Christi 1994, no writ). Assuming Flinn was representing Holtzclaw in this matter, he would have had to file suit against the contractors by 1989. Not having done so, Holtzclaw was required to file any claim of legal malpractice within two years of that date, or before the end of 1991. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988) (cause of action for legal malpractice is governed by the two-year statute of limitations).

However, limitations do not begin to run in a legal malpractice case until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of the cause of action. *Maverick*, 760 S.W.2d at 646. Holtzclaw specifically pleaded that neither she "nor [Gary] Smith[2] discovered, nor in the exercise of reasonable diligence should have discovered, Flinn's wrongful conduct until 1992."

■ When a plaintiff pleads the discovery rule, in order to prevail on a motion for summary judgment based on limitations, the defendant must present sufficient evidence to prove, as a matter of law, that no genuine issue of material fact exists with respect to when the plaintiff discovered, or using reasonable diligence, should have discovered the essential facts of his cause of action. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Medical Protective Co. v. Groce, Locke & Hebdon*, 814 S.W.2d 124, 127 (Tex.App.—Corpus Christi 1991, writ denied).

### The Summary Judgment Evidence

To support his motion for summary judgment, Flinn attached excerpts from his deposition wherein he stated that, although he contacted the district attorney's office regarding filing charges against the contractors,[3] he personally informed Holtzclaw he was not representing her in her actions against the contractors, and provided her with the names of attorneys to contact. Flinn admitted he had not declined, in writing, his representation of Holtzclaw with respect to the contractors.

Flinn also relied on the affidavit of Della Seal, an employee of Commercial State Bank in Sinton, Texas, where Holtzclaw had her personal checking account. Seal stated Flinn told her he was not representing Holtzclaw in any action against the contractors because he did not handle cases of this type. Seal further stated she told Holtzclaw that Flinn

---

1. Both Holtzclaw and Flinn are now deceased and represented by their respective executors, Gary R. Smith and Dorothy M. Flinn.

2. Smith's grandmother was Holtzclaw's first cousin.

3. The district attorney declined to prosecute.

was not representing her in the contractor matter.

Flinn claims that the Seal affidavit and his deposition excerpts establish as a matter of law that Flinn did not undertake to file suit on Holtzclaw's behalf, that he informed Holtzclaw he was not going to file suit against the contractors, that she was put on notice he was not representing her, and that she did not exercise reasonable diligence in discovering Flinn did not file suit.

Holtzclaw's summary judgment proof consisted of the affidavit of her executor, Gary Smith; excerpts from Flinn's deposition; a letter from Holtzclaw's attorney, Ralph Weston; and the affidavits of Lana Tong, Jennie L. Sloane, and Patricia Walker.

Smith became involved in Holtzclaw's affairs after he received a telephone call in May 1992 from Lana Tong, an employee at Commercial State Bank concerning deficiencies in Holtzclaw's account. He investigated Holtzclaw's finances and determined that, between October 1984 and April 1985, Holtzclaw paid contractors approximately $100,000 for improvements and renovations to her home.

Smith did not actually see copies of the checks until June 1992. Prior to that time, Smith asked Flinn for the checks, but Flinn failed to deliver them to Holtzclaw until attorney Ralph Weston demanded the checks. Smith stated Holtzclaw was confused about why she had written the checks, but that she was under the impression she did not have to take any action because Flinn had come to her home, picked up the checks, and assured her he would be assisting her in recovering her money.

Smith's affidavit testimony differs from Flinn's deposition testimony regarding Flinn's representations to Holtzclaw. While Flinn stated he told Holtzclaw to find another attorney to handle the matter, Smith stated he conferred with Flinn in August 1992, and Flinn informed him he had investigated the contractors and found they were "fly-by-nighters" with no assets. Flinn also told

Smith he had advised Holtzclaw she had no remedy and that it would be a waste of time to pursue them. Smith conducted his own investigation of the contractors and, based solely on the endorsement information contained on the checks, stated he easily located three of the contractors. After conferring with counsel, however, he was advised that all applicable statutes of limitations had run.

In his deposition, Flinn admitted going to Holtzclaw's home several times and discussing the situation with her. She showed him the canceled checks used to pay the contractors, and Flinn took possession of them.

That Flinn still had the checks in his possession and failed to return them to Holtzclaw was supported by a letter dated June 15, 1992 from attorney Ralph B. Weston. In the letter, Weston made a formal demand upon Flinn for the return of the canceled checks.

Seal's affidavit was directly controverted by the affidavit of Lana Tong, another employee at Commercial State Bank. Tong stated there was a note in Holtzclaw's file that Flinn was to be contacted if Holtzclaw encountered any problems. When she made Flinn aware of problems with creditors, he dictated several letters advising the creditors that Flinn was Holtzclaw's attorney and all questions should be directed to him. She stated unequivocally that Flinn was Holtzclaw's attorney. Tong denied Seal had told her Flinn was not representing Holtzclaw.

Jennie Sloane was Holtzclaw's housekeeper during the period 1985 to 1992. She corroborated Flinn's statement that he came to Holtzclaw's home and obtained the canceled checks. Sloane stated Holtzclaw told her she had turned over all her problems with the contractors to Flinn and that he would be helping her get her money back. At no time between 1985 and 1992 did Sloane receive any indication from anyone that Flinn was no longer assisting Holtzclaw in resolving her dispute with the contractors.

Patricia Walker is an employee of Smith. She testified she overhead Smith talking to Flinn in August 1992.[4] She corroborated

4. She stated she was able to hear Flinn's side of the conversation because Smith was talking to Flinn on a speaker phone.

Smith's affidavit testimony that Flinn told Smith the contractors were deadbeats and swindlers, that Flinn had attempted to locate them but could not, and that it would be a waste of time and money to try to pursue them.

Smith claims this summary judgment evidence established Flinn was representing Holtzclaw and Holtzclaw did not ascertain his inaction until he turned over the checks. Holtzclaw contends her claim is not time-barred because she filed suit within three months of Smith's conversation with Flinn.

### Analysis

 We find the foregoing summary judgment evidence creates a fact question regarding whether an attorney-client relationship was established between Flinn and Holtzclaw with respect to the contractors' overreaching of Holtzclaw. However, the evidence is insufficient to raise an issue of material fact regarding application of the discovery rule. While we do not condone Flinn's actions in acquiring the canceled checks, failing to return them promptly to Holtzclaw after he allegedly determined it was pointless to sue the contractors, and failing to decline representation in writing, we do not believe a person exercising reasonable diligence would have delayed seven years before inquiring of her attorney the status of her complaints. The exception to the discovery rule should be permitted only in circumstances where "it is difficult for the injured party to learn of the negligent act or omission." *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1994). *See also Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex.1976) (discovery rule applicable to false credit report); *Gaddis v. Smith,* 417 S.W.2d 577, 580 (Tex.1967) (discovery rule applicable in medical malpractice cases); *Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438 (1940) (discovery rule applicable in cases of fraud). Holtzclaw did not provide any summary judgment evidence to explain why, prior to Smith's involvement in 1992, she did not inquire of Flinn the status of her claims against the contractors, nor did she attempt to explain why it was difficult for her to learn of Flinn's alleged negligent acts.

 We are aware that a fiduciary relationship exists between attorney and client, *McClung v. Johnson,* 620 S.W.2d 644, 647 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e), and that this relationship may sometimes justify imposition of the discovery rule. However, even a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs. *Computer Assoc. Int'l, Inc.,* 918 S.W.2d at 456 (citing *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197, 205 (Tex.1957)); *McClung,* 620 S.W.2d at 646. Based on the record before us, we are reluctant to apply the discovery rule based solely upon the parties' fiduciary relationship.

Because Holtzclaw failed to present any summary judgment evidence establishing her exercise of reasonable diligence in ascertaining the facts of her cause of action, we conclude the trial court did not error in granting summary judgment on limitations.

The judgment of the trial court is AFFIRMED.