William L. **RUSSELL** and Business Real Estate, Inc., Appellants,

v.

Robert L. **CAMPBELL** and Raymond C. Stephens, Appellees.

No. B14–85–400–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 2, 1987.

Rehearing Denied Feb. 5, 1987.

Edward J. Wallison, Jr., Houston, for appellants.

Tom L. Pettiette, Houston, for appellees.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

William L. Russell and Business Real Estate, Inc. (appellants) appeal from a judgment assessing over $800,000 in damages against Russell, invalidating the incorporation of Business Real Estate, Inc. and appointing a receiver to sell all corporate assets. We affirm the judgment of the trial court.

Appellant Russell raises ten points of error on appeal. He challenges the trial court's rulings on joinder of parties, admission of evidence and jury argument; the court's failure to submit certain special issues and its submission of others; and the

court's actions concerning appellees' deceptive trade practices claim. Appellant Business Real Estate, Inc. raises one point of error alleging that the trial court erred in failing to submit special issues concerning its slander of title claim.

Robert Campbell and Raymond Stephens (appellees) owned an oil pipe testing business. When they sold it in 1974, Russell, their CPA, suggested they invest their profits for retirement purposes in a partnership he was forming with four others to purchase and develop real estate. The partnership, Houston Business Properties, was formed in February 1974 and included Russell as managing partner and Campbell, Stephens, Billy G. Russell, Brady Rosentritt, Joe Ray Hackworth and Joyce McLean as partners. The General Partnership Agreement set out, among other provisions, the following: that all capital gains and other profits would be left in the partnership to provide retirement benefits; that the partnership was to continue at least until February 15, 1989; that the managing partner was not to receive a salary or other compensation for serving in that capacity but was to receive reasonable compensation for any CPA services performed for the partnership; that "the parties hereby acknowledge that the managing partner manages, and may continue to manage other partnerships and may continue to engage in other distinct or related business or investments"; and that most partnership transactions, as well as changes in the partnership agreement, required the affirmative vote of two-thirds of the partners. The partners' percentage interests, based on the amount of cash, property and/or services contributed, were as follows: Russell (25.64%), Stephens and Campbell (17.09% each); Billy Russell (18.80%); Hackworth and McLean (6.41% each); and Rosentritt (8.54%). The 34% combined interest of Stephens and Campbell was sufficient to block any partnership action they opposed.

In 1980 Russell wrote to the partners suggesting the partnership be converted to a corporation to take advantage of more favorable loan and tax rates. He also proposed that 3.111 acres he owned on Sheldon Road be added to the partnership properties in exchange for his receiving additional shares of stock. His letter stated that Billy G. Russell and an associate wanted a restaurant constructed on the site and that future plans included a small strip shopping center and office/warehouse rental space. Attached to the letter were a formal proposal, consisting of ten items, and a ballot. Campbell testified that he did not return his ballot because he opposed the proposal. He said it would dilute his interest and result in loss of the control he and Stephens possessed with their 34% interest. Stephens testified that he voted for the proposal (excluding two of the items) only because Russell had told Stephens' wife that Campbell and the other partners had voted for the incorporation. Russell testified that Campbell had verbally approved the incorporation.

Business Real Estate, Inc. was incorporated in July 1980, and four new individuals, Robert Haseman, Frankey Rhnea Bostick, Steve Filleman and John Willburn, joined the former partners as shareholders. They each contributed $10,000 in cash or services. With the acquisition of the Sheldon Road property, Russell's ownership interest increased from 25% to 45%, while Campbell's and Stephens' individual interests decreased from 17% to 11%. Following the incorporation, few of the corporate formalities were observed. No directors were elected, no bylaws adopted and no meetings held. Finally, at Campbell and Stephens' insistence, Russell called a shareholders' meeting on September 24, 1982. One item on the agenda was Russell's request that he be reimbursed with stock for $75,000 worth of services rendered since 1974. Campbell moved that Russell be reimbursed for $3,000 with 3,000 shares. The motion was defeated and the request tabled. Two months later, at a November 12th meeting, the shareholders awarded Russell 75,000 shares for his services. Stephens, with Campbell's proxy, voted against this compensation, but their diminished ownership left them powerless to veto the action. Thereafter, Russell's ownership interest increased to 52%, a control-

ling interest, while Campbell's and Stephens' individual interests decreased to 9%.

On December 27, 1982, Campbell and Stephens filed suit against Russell seeking an accounting, and the appointment of a receiver or partition in kind of the partnership assets. They also filed a Notice of Lis Pendens on the corporation's real property. Appellees later amended their petition to include breach of fiduciary duty/constructive fraud, professional malpractice and deceptive trade practices claims. They also claimed to be suing as representatives of shareholders Billy G. Russell, Hackworth, McLean, Rosentritt, Filleman and Bostick. The filing of the lis pendens halted a pending sale of a parcel of the corporation's real property, and Business Real Estate, Inc. subsequently intervened in appellees' suit, seeking damages from appellees for slander of title. The case was tried to a jury which answered twelve special issues in favor of appellees. The trial court then trebled the actual damage award against Russell; invalidated the incorporation of Business Real Estate, Inc.; reinstated the original partnership interests as to the two parcels of real property that had been a partnership asset prior to the formation of the corporation; and appointed a receiver to sell the remaining three parcels of property.

In his first point of error, Russell argues that the trial court erred by not requiring the joinder of all non-party partners and shareholders as necessary and indispensable parties. In their third amended petition appellees stated they were filing suit individually and as representatives of all of the original partners (excluding William Russell) and all but two of the shareholders (Haseman and Willburn). Appellants specially excepted to this attempt to sue in a representative capacity and asked the trial court to abate the action until all the partners and/or shareholders could be joined as necessary and indispensable parties. The trial court overruled the plea in abatement. Russell contends this is fundamental error.

■ We note that fundamental error exists only where the record shows on its face that the court lacked jurisdiction or the public interest as declared in this state's statutes and constitution is directly and adversely affected. *Cox v. Johnson,* 638 S.W.2d 867, 868 (Tex.1982). As neither situation applies in this case, we turn to the question of whether all necessary and indispensable parties were before the court. It is our consensus that they were. Following the filing of the suit, Business Real Estate, Inc. intervened, having the power to "sue and be sued, complain and defend, in its corporate name." Tex.Bus.Corp. Act Ann. Art. 2.02A(2) (Vernon Supp.1986). As a result, the interests of all eleven shareholders (which includes all the requested parties) were represented before the court.

Furthermore, the trial court's judgment restores the partners' ownership interests as they existed at the formation of the partnership and orders Russell to re-pay to the partnership $247,565, which constitutes expenditures on three of its properties. Also, all the requested parties had notice of the suit as evidenced by the fact that after the suit was filed they signed proxies for appellees' attorney (authorizing him to act as agent and proxy with respect to all securities of the corporation) and/or testified at the trial. The first point of error is overruled.

In point of error two, Russell contends the trial court erred in admitting certain evidence and erred further in allowing appellees' counsel to refer to this evidence in his closing argument. At issue are proxies of seven of the eleven shareholders of Business Real Estate, Inc., which were executed approximately eighteen months after the lawsuit was filed. The proxies appointed appellees' counsel as agent and authorized him to act as such with respect to each shareholder's securities in the corporation. Russell argues that the proxies were neither material nor relevant and were introduced solely to imply that the majority of the shareholders, rather than Campbell and Stephens alone, were plaintiffs in the suit. Russell feels that such an "illusion" could have allowed the jury to infer that he must have done something wrong if most of the shareholders were prosecuting him. He also argues the ju-

rors were further misled when appellees' counsel referred to the proxies in his closing argument. The pertinent parts of the argument were as follows:

> We are talking about not just Mr. Russell, excuse me, Mr. Campbell and Mr. Stephens as I told you in the beginning, and as you saw the proxy that you all will be able to take back, I'm here for everybody's except for Mr. Rosentritt that came in here and testified. Mr. Russell is obviously not to be in that group, but everybody else is, and in the folder that I have, I have the proxies for are people that I am representing here, also. That's not just these two individuals.
>
> . . . . . .
>
> You are going to have to think I guess about why if he said that no one else misunderstood, I'm holding the proxy of every other partner other than Mr. Russell and Mr. Rostentritt [sic]. You can look at those when you get them back there in the back; Mr. Hackworth and all the rest of them. Think about that, think about whether or not everybody else understood.

■ Appellees' offer of the proxies into evidence followed testimony by Russell concerning his use of proxies to vote the shares of four other shareholders during the meeting at which he was voted the 75,000 shares in compensation for his services. By use of those proxies and other testimony, Russell suggested he had the support of all the other shareholders. The fact that most of these same shareholders signed proxies for appellees' counsel suggests otherwise. The proxies thus were relevant to rebut Russell's testimony and therefore are admissible. *Southern Pacific Transportation Co. v. Peralez,* 546 S.W.2d 88, 95 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); 35 Tex. Jur.3d *Evidence* § 155 (1984).

We further note that counsel may properly discuss the reasonableness and probative effect of the evidence during jury argument. However, such latitude extends only to the facts and issues raised by the evidence admitted under the ruling of the court. *Texas Sand Co. v. Shield,* 381 S.W.2d 48, 57–58 (Tex.1964). The proxies were in evidence to counter Russell's suggestion that he had the backing of the other shareholders. Appellees' attorney made reference to that fact. He also referred to special issues in which the jury was asked to consider the partnership and the corporation as well as the plaintiffs. Further, he asked them to look at the pleadings which show that appellees were suing as representatives of all but three of the shareholders. Because the argument discussed only the "facts and issues raised by the evidence," it was not improper, and point of error two is overruled.

In point of error three Russell assigns error to the trial court's failure to submit his special issues concerning affirmative defenses of statute of limitations, fairness, waiver and estoppel.

## STATUTE OF LIMITATIONS

Russell correctly states that the three theories of liability on which the trial court submitted the case to the jury (professional negligence, breach of fiduciary duty and the DTPA) are subject to the two-year statute of limitations. Tex.Civ.Prac. & Rem. Code § 16.003 (Vernon 1986); Tex.Bus. & Com.Code Ann. § 17.56A (Vernon Supp. 1986). He asserts that these causes of action were based ultimately upon alleged acts and omissions surrounding the incorporation of Houston Business Properties in July of 1980. However, as appellees did not file suit until December 27, 1982 (over two years later), Russell contends their claims are barred. On the basis of this affirmative defense, he requested two special issues. Special Issue No. 4–A asked whether appellees knew or should have known at the time they considered the ballot proposals in July 1980 that their respective ownership percentages would be reduced by the incorporation. Special Issue No. 2–A asked if they knew or should have known when they signed the partnership agreement on February 15, 1974, that Russell intended to be personally involved in additional real estate investments.

■ Contrary to Russell's assertion, appellees' causes of action were not based

solely on the incorporation in 1980. They also extended to the formation of the partnership in 1974, to Russell's representation of appellees as their CPA prior to that date and to actions taken at the series of shareholders' meetings held in the fall of 1982. As will be developed more fully in our discussion of points of error six, seven and eight, we find that the causes of action were timely filed and were not barred by the two-year statute. Therefore, Russell was not entitled to the submission of the tendered defensive special issues.

## FAIRNESS AND FULL DISCLOSURE

Russell states that as a fiduciary he had the burden of showing that his dealings with appellees were fair and with full disclosure. He affirmatively pled fairness and introduced evidence at trial to support that defense. He then tendered two special issues which asked the jury whether he fully and fairly disclosed that he was going to continue to invest in other real estate ventures subsequent to the formation of the partnership, and whether he fully and fairly disclosed all material information to the partners when the corporation was founded.

■ We hold that the trial court did not err in refusing those issues. Special Issue No. 4 requested the jury to answer whether Russell, while acting as certified public accountant for appellees, did any one of the following acts:

1. Represented, if at all, that incorporation and inclusion of Billy G's, IWECO, and Sheldon Road properties was in the best interest of the plaintiffs when it was not, if at all.
2. Failed, if at all, to insist that plaintiffs seek outside legal or accounting counsel to review the proposed actions and corporate documents.
3. Failed, if at all, to inform the plaintiffs of his conflict of interest, if any.
4. Failed, if at all, to inform the plaintiffs that the incorporation and inclusion of the 3 properties would increase the defendant's ownership percentage while reducing theirs.
5. Failed, if at all, to inform the plaintiffs that the incorporation and inclusion of the 3 properties would increase Russell's percentage ownership without increasing cash flow.
6. Failed, if at all, to inform the plaintiffs of the effect of the incorporation upon the control of the management of the corporation.
7. That Russell failed, if at all, to disclose that a less than majority interest in a Texas closely-held corporation was of no or reduced value.
8. Failed, if at all, to inform the plaintiffs that there were alternative available methods to obtain financing other than inclusion of all properties in a corporate form.

This issue includes but expands upon those tendered by Russell, and the trial court is not required to submit other and various phases or different shades of those same issues. *Prudential Insurance Co. of America v. Tate,* 162 Tex. 369, 347 S.W.2d 556, 559 (1961).

## WAIVER

■ Russell also submitted a special issue concerning his defense that appellees had waived the alleged defects surrounding the incorporation by their subsequent conduct. He defined *waiver* as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.

There was indeed evidence that appellees attended shareholder meetings, voted their shares and, in the case of Stephens, served on the board of directors. However, both men testified that in so doing they were not waiving their objections to the incorporation but rather were attempting to protect their interests by trying to stay informed. Waiver involves a *known* right. Both parties testified about Russell's lack of communication with the shareholders during the two years following the incorporation. Appellees could not knowingly waive unknown defects. Based on the lack of evidence of knowledge, the trial court correctly refused to submit this issue. *Johnson v. Whitehurst,* 652 S.W.2d 441,

449 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). However, the court did ask the jury if appellees had *ratified* the incorporation, and the jury answered no.

## ESTOPPEL

Finally, Russell pled estoppel and submitted a special issue asking if appellees should be estopped from claiming that Business Real Estate, Inc. was improperly formed. Estoppel was defined as occurring when a party recognizes the validity of a transaction, accepts the benefits from it and then attempts to repudiate or avoid the transaction.

■ The evidence is conflicting as to agreement to incorporate. Campbell did not return his ballot, and Stephens did so only after being told that all the partners had voted to incorporate. In addition, both court-appointed auditor Harold May and appellees' expert, certified public accountant Dave Rader, testified that appellees were asked to make this decision without being fully apprised of the disadvantages of this change in business entities. For the following two years they knew nothing of the corporation, how it was being run, or whether it was in fact a corporation. Finally, having acted to protect their interests and discovering the full extent of what had transpired, appellees promptly filed suit. The trial court correctly refused to submit the issue of estoppel. *Johnson v. Whitehurst*, 652 S.W.2d at 449. Russell's third point of error is overruled.

## TEXAS DECEPTIVE TRADE PRACTICES ACT

In his fourth point of error Russell contends that the trial court erred in allowing appellees to prosecute a DTPA claim despite their failure to comply with the Act's threshold statutory notice requirements. Tex.Bus. & Com.Code Ann. § 17.50A (Vernon Supp.1986). Section 17.50A(a) requires that a consumer give written notice to the person against whom damages are sought at least thirty days before filing suit. However, section 17.50A(b) provides that if notice may not be timely given due to the necessity of filing suit to prevent the expiration of the statute of limitations, then notice is not required.

■ Appellees were unaware of the full extent of Russell's activities concerning the corporation until the meeting of September 24, 1982. Following this discovery, they filed their original petition on December 27, 1982. On August 7, 1984, the original petition was amended to include a DTPA cause of action. This occurred just prior to the expiration of the two-year limitations period. We hold the provisions of section 17.-50A(b) applied and the thirty-day notice was not required. Russell's point of error four is overruled.

Russell argues in point of error five that the trial court erred in trebling appellees' actual damages under their DTPA claim as that decision was solely within the jury's discretion. Furthermore, Russell contends that by failing to submit a special issue on treble damages, appellees waived their claim to such damages.

In its answers to Special Issue No. 4, the jury found eight specific acts or failures to act on Russell's part. Russell contends that all of these acts or failures to act involved events surrounding the decision to incorporate, which took place in July 1980. Therefore, the question of how actual damages may be trebled should be governed by the DTPA as amended in 1979. The trebling of actual damages under the Act during that period of time was within the discretion of the trier of fact if the trier of fact found that the defendant acted knowingly. *Martin v. McKee Realtors, Inc.*, 663 S.W.2d 446, 447–48 (Tex.1984); Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon Supp.1986). In addition, the Supreme Court in *Martin* determined that a plaintiff seeking discretionary damages must request a jury issue on such damages or he waives recovery. *Id.* at 448.

The version of the DTPA in effect when the deceptive act or practice occurs governs a case. *La Sara Grain Co. v. First National Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex.1984). Special Issue No. 4 asked the jury to find whether Russell, "while acting as a certified public account-

ant for the plaintiffs," did any one of several acts. One of those acts, Representation No. 3, concerned his failure, if at all, to inform the plaintiffs of any conflict of interest. As worded, this representation was not limited to the acts surrounding the transition from partnership to corporation nor to any specific time period.

According to the testimony of appellees' expert witness, a potential conflict of interest existed at the time Russell initially promoted the partnership in 1974. At that time appellant was acting as certified public accountant for appellees. After formation of the partnership appellant acted as CPA for appellees and the partnership. This created a potential for conflict of interest. It was appellees' belief that the purpose of the partnership was to leave all capital gains and other profits in the partnership to provide them with retirement benefits. However, there is no evidence that Russell ever discussed retirement needs or goals with appellees. Instead, his paramount interest was in using the partnership as an instrument for real estate investments. It was never really used as a retirement vehicle. Further, the best interest of the partnership was not necessarily the same as the best interest of appellees. Therefore, appellant owed appellees the duty of disclosure of this conflict of interest. Failure to disclose the conflict of interest created a breach of duty and thereby a cause of action.

■ The jury's affirmative answers to each of the eight acts listed under Special Issue No. 4 and its finding of unconscionable action in Special Issue No. 6 suggest a course of conduct beginning with the formation of the partnership in 1974. This conduct continued through the incorporation in 1982 and culminated in Russell's obtaining control of the corporation. Since that course of conduct began before the August 27, 1979 effective date of the 1979 DTPA amendments, and since those amendments do not affect a cause of action that arose either in whole or in part prior to that date, the original and 1977 versions of the DTPA apply herein. Deceptive Trade Practices Act, ch. 603, § 9, 1979

Tex.Gen Laws 1327, 1332. *See Mytel International, Inc. v. Turbo Refrigerating Co.,* 689 S.W.2d 315, 319 (Tex.App.—Fort Worth 1985, no writ). Under those versions, treble damages are mandatory. *Woods v. Littleton,* 554 S.W.2d 662, 671 (Tex.1977). Therefore, point of error five is overruled.

■ In point of error six Russell argues that the trial court erred in submitting those special issues relating to appellees' DTPA claim because they dealt with events—the incorporation in July 1980—that were barred by the two-year statute of limitations. However, Section 17.56A of the DTPA requires that an action brought under that Act be filed within two years after the occurrence *or the discovery of the occurrence* of the false, misleading or deceptive act or practice. Tex.Bus. & Com. Code Ann. § 17.56A (Vernon Supp.1986). Appellees testified that following the incorporation, no meetings were held nor directors elected nor by-laws adopted. At their insistence Russell finally called a meeting in September of 1982, and it was not until then that appellees discovered what Russell had been doing during the previous two years. Simultaneously, they learned that Russell was seeking compensation in the form of additional shares of stock for services performed from 1974 to 1982. With these added shares, Russell gained complete control of the corporation. Two months later, in December 1982, appellees filed their original petition. They added their DTPA cause of action in August 1984. The original petition was therefore filed within two years of the discovery of the acts of which they complain. The Act's limitations requirement having been met, we overrule point of error six.

Russell also asserts statute of limitations problems in points of error seven and eight. In point of error seven he states that the trial court erred in submitting Special Issues Nos. 2 and 3 dealing with Russell's professional negligence as such a claim was barred by the two-year statute of limitations. He asserts that the evidence presented at trial showed that all of his claimed negligent acts as a certified public

accountant for appellees occurred between February of 1974 and July of 1980. Since the suit was not filed until December 1982, it was therefore barred.

■ Appellees argue that an accountant has the same legally imposed duty to his client to disclose facts material to his representation as does an attorney to his client. In *McClung v. Johnson,* 620 S.W.2d 644, 647 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.), the court concluded that the attorney-client relationship creates this duty to disclose, and breach of the duty is tantamount to concealment. That court held that the failure to disclose operates to toll the statute of limitations for so long as the duty exists, and that the duty to disclose ceases when the relationship ends. Russell's representation of the partnership continued through 1982; thus, under the *McClung* analysis, Russell had a duty to disclose material facts as long as that relationship existed. There is ample evidence in the record of his failures to disclose. We have already noted that appellees were not kept informed about what Russell was doing with the corporate property during the two years following the incorporation. Appellees argue that the statute of limitations was tolled until the CPA relationship ended in 1982. We agree and overrule point of error seven.

In point of error eight Russell states that the trial court erred in allowing appellees to base the majority of their breach of fiduciary duty damage theory on his purchase of property outside the partnership. He contends any claim arising from that purchase was barred by the two-year statute of limitations. Russell recorded the purchase of his Bonnie Oaks property on July 31, 1978, and argues that appellees were charged with constructive notice of the purchase on that date. He contends that when evidence of fraud may be disclosed by examination of public records, limitations begin to run from the time the fraud could have been discovered by the exercise of ordinary diligence. *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex.1981), citing *Sherman v. Sipper,* 137 Tex. 85, 152 S.W.2d 319, 321 (1941). Further, constructive notice in law creates an irrebuttable presumption of actual notice. *Mooney,* 622 S.W.2d at 85.

■ We note that the Supreme Court has decided that a fiduciary relationship is a circumstance to be considered in determining whether fraud might have been discovered by the exercise of reasonable diligence. "It may excuse the defrauded party from taking action that would be required in an arm's-length transaction or from making as prompt or searching investigation as might otherwise be expected." *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197, 205 (1957). Russell was managing partner of Houston Business Properties, Inc., as well as appellees' personal CPA. He was responsible for "the day to day management and ministerial acts of the Partnership." Both appellees testified that they trusted him completely and relied on his accounting and investment advice, partly because they were preoccupied with their other businesses and partly because of their lack of education and knowledge of accounting matters. Neither man learned of Russell's ownership of the Bonnie Oaks property until *after* they filed suit against him. They had no reason to believe Russell was engaging in "self-dealing" in contravention of the partnership agreement. "By entering into fiduciary relations, the parties consent as a matter of law to have their conduct measured by the standards of the finer loyalties exacted by courts of equity." *Courseview,* 312 S.W.2d at 205. Because appellees' failure to discover Russell's breach of his fiduciary duty was not due to lack of diligence on their part, we find their cause of action was not barred by the statute of limitations. We overrule point of error eight.

In his next point of error, Russell challenges the trial court's submission of Special Issue No. 1 as it relates to his breach of fiduciary duty for failure to disclose the existence of his interest in the Bonnie Oaks property. He contends that it assumes the existence of disputed material facts. Although both appellees testified they did not know about his interest in the property,

Russell contends he put this matter in issue by testifying they did know he owned it.

■ To preserve error Russell was required to point out distinctly the matter to which he objected and the grounds of his objection. Tex.R.Civ.P. 274. Failure to do so results in waiver of any complaint on that ground of appeal. *Davis v. Campbell*, 572 S.W.2d 660, 663 (Tex.1978). Russell's objection regarding Bonnie Oaks was as follows:

> MR. LOCKE: I object to bringing of Bonnie Oaks and Federal Road before the jury.
>
> . . . .
>
> MR. LOCKE: On the basis first that with respect to Bonnie Oaks that there is no—Bonnie Oaks is specifically disclosed or the fact that Mr. Russell was going to invest in real estate was specifically disclosed in a partnership agreement, and he was under no duty to disclose Bonnie Oaks.

Appellant's statement did not point out distinctly that he was objecting to the special issue because the way it was phrased assumed the existence of a disputed material fact. The complaint at trial does not comport with the complaint made the basis of his point of error on appeal. Therefore, error, if any, was waived and point of error nine is overruled.

■ In his final point of error Russell maintains that if this Court finds that the submission to the jury of appellees' DTPA claim was in error, and yet finds sufficient reason to uphold or modify the trial court's judgment, then there is no basis on which to affirm the award of attorney's fees contained in the judgment. However, as we have found that the DTPA claim was properly submitted, this point of error is moot and is overruled.

Business Real Estate, Inc. also raises a point of error on appeal. The corporation intervened in appellees' suit against Russell and sought damages from appellees for slander of title. This suit was based on the alleged wrongful filing of the notice of lis pendens against corporate property. The corporation argues that although it introduced evidence at trial to support the sub-mission of special issues on its claim, the trial court refused these issues, thus committing reversible error.

■ To recover in an action for slander of title, a party must allege and prove: 1) the utterings and publishing of disparaging words; 2) that they were false; 3) that they were malicious; 4) that special damages were sustained thereby; 5) that the plaintiff possessed an estate or interest in the property disparaged; and 6) the loss of a specific sale. *Clark v. Lewis*, 684 S.W.2d 161, 163–64 (Tex.App.—Corpus Christi 1984, no writ); *see also Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex.1983); *A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 146 (Tex.1982).

Appellant corporation alleges that appellees' original petition sought only an accounting of the partnership from Russell; therefore, the statement in appellees' notice of lis pendens that their suit "involves title to ... certain real property" was false. Our question, then, is whether appellees' suit did indeed involve the title to real estate or seek to establish any interest or right therein, thereby entitling appellees to file a lis pendens under the provisions of Tex.Rev.Civ.Stat.Ann. art. 6640 (Vernon 1969) (now found in Tex.Prop.Code Ann. § 12.007 (Vernon 1984)). *Hughes v. Houston Northwest Medical Center*, 647 S.W.2d 5, 6 (Tex.App.—Houston [1st Dist.] 1982, writ dism'd w.o.j.). Our answer is to be found in appellees' pleadings. *Hughes*, 647 S.W.2d at 6.

In their original petition, appellees requested that if the court should decide that appointment of a receiver were not necessary, then the partnership assets be partitioned in kind. Later, appellees amended their petition, alleging that "[t]he facts and circumstances outlined show the establishment of a constructive trust with defendant as trustee, and with plaintiffs as the beneficial owners of said property in the proportion indicated in the general partnership agreement." Further, they requested that the court impose a constructive trust upon the Sheldon Road property.

The ultimate effect of lis pendens is to prevent either party to certain litigation from alienating the property in dispute. *King v. Tubb*, 551 S.W.2d 436, 443–44 (Tex. Civ.App.—Corpus Christi 1977, no writ). When appellees filed suit against Russell, the corporation's assets included three parcels of property. One parcel was the subject of a proposed sale to Union Carbide. Appellees feared that the money realized from the sale would be applied to pay off the debt on another piece of property, which subsequently might be found not to be in the corporation or partnership (i.e., the Sheldon Road property contributed by Russell). By filing the lis pendens, appellees were trying to protect their title and interest in real property owned by the corporation.

 As part of the relief sought by appellees involved a claim of interest or right in the land, their suit was not merely one for an accounting and distribution of partnership assets. *Hughes*, 647 S.W.2d at 7. Thus, the suit did come within the provisions of the lis pendens statute, and appellees' statement in the lis pendens notice that their suit involved title to real property was not false. Further, the corporation was ordered dissolved and its real property sold with proceeds distributed among the partners. Therefore, with no evidence of falsity or of special damages, appellant corporation was not entitled to submission of special issues on its slander of title claim. *Temple v. Dull*, 640 S.W.2d 639, 640 (Tex. App.—Houston [14th Dist.] 1982, no writ). Thus, this point of error is overruled.

We affirm the judgment of the trial court.